**In the Matter of RIBS OF GREENWICH VILLAGE, INC., d/b/a Tony Roma's, Debtor.**

**Bankruptcy No. 85 B 10509 (PBA).**

United States Bankruptcy Court, S.D. New York.

Jan. 31, 1986.

Bragar & Wexler, New York City, for 450 Village Co.

Finkel, Goldstein & Berzow, New York City, for debtor.

Schneider & Arzt, New York City, for Creditors' Committee.

MEMORANDUM DECISION
AND ORDER

PRUDENCE B. ABRAM, Bankruptcy Judge:

By notice of motion dated December 27, 1985, 450 Village Company ("Landlord")

has sought an order of this court awarding to it attorneys' fees in the amount of $20,-135.97 and interest of $2,678.67 on late rent. The Debtor, Ribs of Greenwich Village, Inc., originally opposed both aspects of the motion but has withdrawn its opposition to the request for interest and has agreed to pay that amount. It remains for this court to determine whether the Landlord is entitled to attorneys' fees and the quantum of fees which should be awarded.

The attorneys' fees for which the Landlord seeks reimbursement were incurred in connection with the Debtor's assumption and assignment of its lease and sale of fixtures and equipment for its restaurant premises located at 450 Sixth Avenue, New York City, to H.H.B.K., Inc., a subsidiary of Horn & Hardart, Inc., for $650,000 cash. The sale was approved by the court on September 11, 1985, after competitive bidding. The closing of the sale transaction did not occur until November 27, 1985, over two months later.

The sale was the outcome of an application filed by the Debtor in August 1985 seeking approval to sell the leasehold, fixtures and equipment to Lifestyle Restaurants, Inc. ("Lifestyle"), which operates a chain of restaurants under the name Beefsteak Charlie's, for $682,000. The purchase price was to be paid partly in cash, partly by assumption of debt and partly by issuance of unrestricted common stock of Lifestyle, whose stock is traded on the American Stock Exchange.

The February 1, 1983 lease for the premises is in part a standard printed form and in part typed additional clauses. Of particular relevance to the attorneys' fee dispute are paragraph 19, part of the printed form, and paragraph 67, which is part of the typed portion. Paragraph 19 provides that, if the tenant defaults in the observance or performance of any covenant and the owner makes any expenditure or incurs any obligation, including but not limited to attorneys' fees, in "instituting, prosecuting or defending any actions or proceedings" the amount is to be paid by the tenant as additional rent. Paragraph 67 provides the

terms under which the lease may be assigned or a sublease granted. It is provided that after the first two years the Landlord will not unreasonably withhold its consent to any assignment or sublease. The factors the Landlord can take into account are detailed. Paragraph 67E(viii) provides

"Tenant shall reimburse Landlord on demand for any reasonable costs that may be incurred by Landlord in connection with said assignment or sublease, including the costs of making investigations as to the acceptability of the proposed assignee or sub-tenant and legal costs incurred in connection with the granting of any requested consent * * *."

Paragraph 67 contains no reference to an assumption and assignment pursuant to Bankruptcy Code § 365.

The Debtor has argued that neither Paragraph 19 nor 67 provide a basis for reimbursement of legal expenses incurred by a landlord in connection with an assumption and assignment under Section 365 of the Bankruptcy Code.

"The numerous leasehold assignment preconditions [of ¶ 67] have not been followed and, *inter alia*, the proposed assignee did not, as required by Section 67 of the lease, provide the landlord with certified financial statements, agreements to indemnify, save, defend and hold the landlord harmless for brokerage commissions and the assignment was not in any way conditional upon the 'reasonable consent of the landlord.' * * * It is respectfully submitted that the assignment given to the landlord was an assignment under federal law and not a consensual assignment pursuant to the provisions of the lease agreement. * * * [P]aragraph 19 of the lease is inapplicable. First, clearly the provision would apply for defaults prior to the filing of the Chapter 11 case and, under Section 362 of the Bankruptcy Code, the landlord would be enjoined from relying on this provision. * * * It is respectfully submitted that the Real Estate Board form of lease is probably the most popular form of commercial lease and, taking the

landlord's argument to its natural conclusion would result in the landlord being entitled to legal fees in any bankruptcy case." Affidavit of Neal M. Rosenbloom in Opposition Sworn to January 21, 1986 at ¶¶ 8, 9 and 12.

The Landlord agrees that the assignment took place under Code § 365 and not through the procedures of Paragraph 67 of the Lease. However, the Landlord does not concede the inapplicability of Paragraph 67E(viii).

■ The only word in Paragraph 67E(viii) that could limit its applicability is the lawyerly "said" before "assignment or sublease." The term "said" means beforementioned. Although greatly beloved by attorneys, the word "said" conveys little meaning. See Wydick, Richard C., "Plain English for Lawyers," 66 Calif.L.Rev. 727, 739–740. There is nothing in the context of its use in this clause to indicate that it was intended to limit reimbursement of attorneys' fees only to assignments and subleases made in precise accordance with Paragraph 67. Courts view with skepticism literal absolutism in contract construction. *In re Nicfur-Cruz Realty Corp.*, 50 B.R. 162, 167 n. 5 (Bankr.S.D.N.Y.1985). As Paragraph 19 makes clear, the intention of the parties was to shift the Landlord's costs, including attorneys' fees, from litigation and otherwise on to the tenant to the extent the necessity for the costs was caused by the tenant's acts, including assignment of its interest in the lease. The court finds that Paragraph 67 of the lease provides a contractual basis for the Landlord to recover the attorneys' fees sought.

Furthermore, Paragraph 19 alone would appear to be sufficient. The Debtor commenced a proceeding seeking to assign the lease which the Landlord was required to defend. Contrary to the Debtor's reading of the case, this court finds the decision *In re J.W. Mays, Inc.*, 30 B.R. 769 (Bankr.S.D. N.Y.1983), to support the Landlord's position. The *Mays* decision holds that under New York law a lease clause must explicitly refer to attorneys' fees and not merely to costs, as did the clause in that case, in

order for attorneys' fees to be recoverable. See also *In re Bon Ton Restaurant and Pastry Shop, Inc.*, 53 B.R. 789 (Bankr.N.D. Ill.1985). Paragraph 19 refers to attorneys' fees in *haec verba.*

Even though provided for by contract, the court must still review the fees for reasonableness. *In re Bullock*, 17 B.R. 438, 439 (B.A.P. 9th Cir.1982) ("This does not give the landlord or secured party a blank check upon the estate of the debtor for attorneys' fees."). Compare, *In re Nicfur-Cruz Realty Corp., supra*, 50 B.R. at 167 ("This reasonableness requirement [of Code § 506(b)] mandates that the bankruptcy court consider, among other things, both the policies, purposes and provisions of the Bankruptcy Code. * * * The services must * * * be necessary to accomplish the appropriate 'end sought.' ").

■ The Debtor asserts that the amount of the Landlord's fees are the result of the Landlord's own intransigence and attempts to cause delay. This court fails to find any violation of the spirit of the Bankruptcy Code in imposing upon the Debtor the Landlord's legal expenses incurred in attempting to obtain information about the financial condition of the proposed assignees and their proposal uses of the premises. Indeed, it is important to a court's consideration of a debtor's application for permission to assume and assign a lease to determine whether a landlord has objections to the proposed use by the assignee or the assignee's financial condition and the nature of the objections in order to evaluate whether it is in the best interests of the estate to grant the application. The best offer which is not necessarily the highest offer, may be the one with the fewest litigation problems. Cf. *In re Liberty Music & Video, Inc. (Free-Tan Corp. v. 49–50 Associates)*, 54 B.R. 799, 800 (Bankr.S.D.N. Y.1985) (Description of extensive pre- and post-assignment litigation between landlord and assignee.) In this case, the Debtor's original offer was unusual because the Debtor was to receive a significant portion of the purchase price in stock. There was an issue as to the type of restaurant to be

operated by the proposed assignee. The Landlord's scrutiny played at least some part in creating the environment in which the all-cash offer from another entity could surface. Even if it had not, the Landlord was still entitled to information. A debtor's counsel can frequently prevent or reduce expenditure of time by "reimburseable" attorneys by constructing noticing of hearings to segregate issues clearly and by adequate communication to allay concerns.

The Landlord's desire to ensure that a landmark violation was removed of record by the closing cannot be faulted as the Debtor as tenant under the lease was obliged to cure such a violation. Likewise, the Landlord's insistance on the resolution of the problem created by a pending personal injury action by virtue of the failure of the Debtor's insurance policy to name the Landlord as an additional insured was a problem created by the Debtor. That some landlords might not be concerned about these matters does not require this court to penalize a landlord which does care. The court finds no relevance to the Debtor's contention that fees awarded to debtor's counsel in other restaurant cases are lower than those sought by the Landlord here as the facts of any given case govern the appropriateness of the fee requests. Here the Landlord's fee request is but 3% of the amount received by the Debtor from the sale.

The Debtor also objects to an allowance of attorneys' fees in connection with the motion to compel their payment. The U.S. Trustee suggests that such fees be allowed at a lower rate. Here Landlord's counsel timely advised Debtor's counsel that fees would be sought and provided relevant data respecting the fees requested. Only after rejection of its request by the Debtor, did the Landlord move in this court. The motion is being resolved in the Landlord's favor. The court fails to see how the Landlord was to have the issue resolved without bringing on a motion. The motion papers are well-prepared. The attached time records are detailed. The papers were accompanied by a helpful memorandum of law. No excess time appears to have been spent on the motion. This court does award fees to counsel for debtor's creditors' committees and others for the preparation of their fee applications, although the court may in appropriate cases reduce the amount somewhat to compensate for the clerical nature of the time spent compiling and verifying time records or because the amount requested is disproportionate to the total fee requested. This court sees no reason to, or purpose in, cutting the fee amount requested relative to the fee motion in this case.

The motion of the Landlord will be granted. The Debtor is directed to pay out of the escrowed amounts the Landlord's attorneys' fees of $20,135.97 and interest of $2,678.67.

It is so ordered.