In re **DIAMOND HEAD EMPORIUM, INC.**, Debtors.

**Bankruptcy No. 86–00274.**

United States Bankruptcy Court, D. Hawaii.

Jan. 23, 1987.

As Amended Jan. 23, 1987.

Edward Kemper, Honolulu, Hawaii, for debtors.

Harrison Chung, Honolulu, Hawaii, for Outrigger Hotel.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: MOTION TO CONDITIONALLY ASSUME LEASE FOR OUTRIGGER HOTELS HAWAII

JON J. CHINEN, Bankruptcy Judge.

On August 8, 1986, Diamond Head Emporium, Inc., ("Debtor") filed a Motion to Conditionally Assume Leases with respect to that certain lease demising to Debtor the restaurant premises located at the Reef Hotel at 2169 Kalia Road, Honolulu, Hawaii. A hearing was held on September 30, 1986, at which time the court approved the Debtor's conditional assumption of the lease upon certain terms and conditions. In view of the Debtor's dispute of the amounts owing under that lease to Outrigger Hotels Hawaii ("Outrigger"), the court scheduled a further hearing to determine the amounts owing by Debtor to Outrigger. At the hearing held on November 5, 1986, Edward C. Kemper, Esq., appeared on behalf of Debtor and Harrison P. Chung, Esq. appeared on behalf of Outrigger.

Based on the records in the file, memoranda submitted, arguments of counsel and evidence produced, the Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. Lynn Gumpert executed a certain lease dated April 4, 1983 (the "Lease") as the tenant with Cinerama Hawaii Hotel, as the landlord, concerning those certain leasehold premises described in the Lease and located on the main lobby level of the Reef Hotel located at 2169 Kalia Road, Honolulu, Hawaii. Debtor is now the tenant under that Lease and Outrigger is now the landlord.

2. Section C(1) of the Lease requires the Debtor to pay to Outrigger a monthly rental in the amount equal to ten percent (10%) of Debtor's gross food sales and fifteen percent (15%) of Debtor's gross liquor sales during each month. The rent is due on or

before the twentieth day of the next month.

3. Section C(3) of the Lease provides that Outrigger may designate the place of payment from time to time at its own discretion.

4. Section C(4) of the Lease provides that, if the Debtor fails to pay the rent, additional rent, or any amount of charges under the Lease, then the unpaid amount shall accrue interest from the date due to the date of payment at the rate of ten percent (10%) per annum.

5. Section H of the Lease provides in part:

Tenant shall indemnify and hold harmless Landlord from and against any and all claims arising from Tenant's use of the demised premises or the conduct of its business or from any activity, work, or thing done, permitted or suffered by Tenant in or about the demised premises and shall further indemnify and hold Landlord harmless from and against any and all claims arising from any breach or default in the performance of any obligation on Tenant's part to be performed under the terms of this Lease, or arising from any act or negligence of Tenant, or any of its agents, contractors, or employees and from and against all reasonable costs, attorney's fees, expenses and liabilities incurred in or about any such claim or any action or proceeding brought against Landlord by reason of any such claim, Tenant, upon notice from landlord, shall defend the same at Tenant's expense by counsel reasonably satisfactory to landlord.

6. Section BB(3) of the Lease provides that Outrigger will furnish utility services to the demised premises, including electricity, gas water and local telephone services.

7. Section BB(4) of the Lease provides that Outrigger will provide air conditioning for the demised premises.

8. Section CC(2) of the Lease provides that, in addition to other rentals and sums due to Outrigger by Debtor, Debtor is to pay to Outrigger the sum of three percent (3%) of gross food and liquor sales for the use of all utilities supplied to the demised premises, including electricity, gas, water, sewer and local telephone. The amount is to be computed on a calendar month basis and is to be due and payable on the twentieth day of the next month. Although these payments are required to be made to Outrigger, Outrigger directed the Debtor to make the payment for utilities to other entities.

9. Section DD(2) of the Lease provides that any waiver of a breach of any covenant, form or condition of the Lease by either party shall not be construed by the other party as a waiver of a subsequent breach of the same.

10. Section DD(5) of the Lease states:

In the event that at any time during the term of this Lease either the Landlord or the Tenant shall institute any action or proceeding against the other relating to the provisions of this Lease, or any default thereunder, then, and in that event, the unsuccessful party therein for the reasonable expenses of attorneys' fees and disbursement incurred therein by the successful party.

Outrigger interprets this section to mean that, if any action or proceeding is instituted against either Landlord [Outrigger] or Tenant [Debtor] relating to the provisions of the Lease or any default under it, then the unsuccessful party must pay for the reasonable expenses of attorneys' fees and costs incurred by the successful party. Debtor claims that this section makes no sense as written. Although articulated poorly, when read in light of the entire tenor of the Lease, the court concludes this section to mean that an unsuccessful party to an action under this lease shall pay to the prevailing party the reasonable attorney fees and costs incurred by the prevailing party.

11. Section DD(17) of the Lease provides: "No amendment or other ratification of this Lease shall be effective unless in writing signed by the parties hereto."

12. On May 9, 1986, Debtor filed its voluntary petition under Chapter 11 of Ti-

tle 11, United States Code, and commenced this case. Relief was ordered on May 9, 1986.

13. On June 27, 1986, Debtor filed a Motion for Order Extending Time to Assume Lease, requesting that the deadline under 11 U.S.C. § 365(d)(3) to assume or reject the Lease be extended. This Motion was granted by the court and the deadline was extended to August 8, 1986, provided that the Debtor file its monthly report(s) of cash receipts and disbursements by Monday, July 7, 1986. On July 7, 1986 the Debtor filed the "Statement of Cash Receipts and Disbursements for May, 1986". On July 31, 1986, the court filed its "Order Granting Motion for Order Extending Time to Assume Leases".

14. On August 8, 1986, Debtor filed a Motion to Conditionally Assume Leases and a hearing was conducted on September 30, 1986. At that hearing, the court held that Debtor had properly filed a request for extension of the deadline to assume or reject the Lease. The court further approved the Debtor's conditional assumption of the Lease provided that the Debtor turned over to his counsel the amount of $22,000.00, for potential payment to Outrigger, to be placed in an interest-bearing account, which sum was turned over to Debtor's counsel.

15. At the hearing on September 30, 1986, Debtor alleged conspiracy claims against Outrigger which the Debtor intended to pursue, and the court established certain deadlines for the handling of that adversary complaint.

16. Meanwhile, on September 2, 1986, Outrigger filed a Motion for Relief from Automatic Stay and for Adequate Protection. A preliminary hearing was conducted on September 15, 1986. Outrigger also contended that the Debtor's "Motion to Conditionally Assume Leases" filed on August 8, 1986 was inadequate to constitute a proper "assumption" under 11 U.S.C. § 365, in that the Debtor did not timely assume the Lease and that, pursuant to 11 U.S.C. § 365(d)(4), the Lease is deemed rejected and the Debtor is required to surrender immediately the leased premises to Outrigger.

17. In a supplemental memorandum filed on September 13, 1986, Outrigger further contended that there can be no "conditional assumption" by the Debtor of its Lease with Outrigger because, despite two lawsuits in Civil Nos. 86–1880 and 86–1480 in the Circuit Court of the First Circuit, State of Hawaii, involving, in relevant part, the Debtor and its restaurant operations at the leased premises, the Debtor did not bring any claims against Outrigger. Further, the Debtor's schedule of assets filed on May 9, 1986 show that it did not assert a claim against Outrigger.

18. Outrigger also contended that Debtor's conditional motion to assume the Lease is an "equivocable act" to assume the Lease, and is thus not an "unequivocable" assumption which is required by 11 U.S.C. § 365, as interpreted by *In re 1 Potato 2, Inc.*, 58 B.R. 752 (Bkrtcy.D.Minn.1986).

19. Outrigger also claimed that Debtor failed to obtain timely court approval of its motion to assume conditionally the Lease because the motion was not approved by the court by the August 8, 1986 deadline, as required by this court's prior decision in *In re House of Emeralds, Inc.*, 57 B.R. 31, (Bkrtcy.D.Hawaii 1985).

20. At the preliminary hearing on September 15, 1986, the court allowed Debtor until September 24, 1986 to file a responsive memorandum with respect to (1) whether the Debtor timely assumed the Lease within the deadline of 11 U.S.C. § 365(d)(3); and (2) whether Debtor's conditional assumption of the Lease was an unequivocal manifestation of the intent to assume the Lease. The court took the matter under advisement and continued the automatic stay until a hearing was held on the matter of the assumption of the Lease scheduled for September 30, 1986.

21. On November 6, 1986 the court issued its Findings of Fact, Conclusions of Law and Order Re: Motion for Relief from Automatic Stay filed by Outrigger Hotels Hawaii. The court found that Outrigger

was adequately protected, that Debtor had equity in the property, and that the property was necessary for an effective reorganization. The court therefore continued the automatic stay.

22. At the hearing on November 5, 1986, to determine the amount due Outrigger, Debtor contended that any and all amounts owing with respect to Section CC(2) of the Lease concerning utility charges are due and payable to Hawaiian Electric Company ("Hawaiian Electric") and not to Outrigger. The basis for Debtor's contention is that it has received, from time to time, instructions from Outrigger to remit these utility payments directly to Hawaiian Electric, and that Outrigger had informed Debtor that it was acting as an agent for the utility companies.

23. Outrigger, on the other hand, contends that it has the right to designate where and to whom payment should be made. Outrigger argues that Section C(3) of the Lease allows this designation and that its directions to remit payment to Hawaiian Electric did not constitute an absolute assignment of the right to receive payment.

24. Philibert L. Carvalho, Credit Manager of Hawaiian Electric testified that there is only one electric meter for the Reef Hotel located at 2169 Kalia Road and that the billing for this account is sent to Outrigger, which is responsible for payment of the account. He further testified that any payments remitted to Hawaiian Electric for the electric account of the Reef Hotel is received and credited by Hawaiian Electric to that account thereby reducing the balance of the amount owing by Outrigger, and that there had been other instances of payment being made on Outrigger's electric account by other parties.

25. Although Debtor argues that the direction to pay Hawaiian Electric was an absolute assignment, the court finds this argument unpersuasive. Outrigger has the right to determine the place of payment, and had directed Debtor to submit the utility payments to Hawaiian Electric, which credited the amounts paid to Outrigger's account.

26. The amounts owing by Debtor to Outrigger for pre-petition utility charges are $35,744.65 ($34,451.33 plus $1,290.32 proration for May 1–8, 1986), and are subject to adjustment pursuant to Section C(2) and Section CC of the Lease.

27. Outrigger claims that Debtor owes $80.00 in fees for Outrigger's processing charges for Debtor's four checks for utility charges (for the months of November 1985 through February 1986) which were returned for insufficient funds.

28. Pursuant to Section C of the Lease, Debtor owes Outrigger $24,176.19 in pre-petition lease rents. Debtor has already deposited $22,000.00 pursuant to the order of this court in a special interest-bearing account.

29. As of November 5, 1986, the Debtor is current in its payments of post-petition rents to Outrigger under Section C(1) of the Lease. The Debtor owes Outrigger the amount of $20.00 for Outrigger's processing fee of a check which was returned for insufficient funds.

30. Debtor also owes to Outrigger the amount of $9,159.89 which arise from errors in calculations and/or certain adjustments to the rents and charges.

31. Pursuant to Section C(4) of the Lease, the Debtor owes interest on each unpaid periodic pre-petition payment and unpaid post-petition utility charges and lease rent, at the rate of ten percent (10%) per annum computed on each unpaid amount from the due date of such amount to the date of payment.

32. Outrigger claims that it is due an additional $4,784.55 for processing room charge payments to the Debtor under Section H of the Lease. These charges arose from guests of the hotel charging meals to their hotel rooms instead of paying for them at the restaurant.

33. Pursuant to Section DD(5) of the Lease, Outrigger is entitled to be reimbursed by Debtor for Outrigger's reasonable expenses and attorneys' fees and

costs, if it is the successful party in the adversary. The court orders Debtor to set aside an additional $8,000.00 to cover the costs of attorneys' fees that may be due should Outrigger be the successful party in the adversary action. Since Outrigger was not the successful party on its Motion for Relief from Automatic Stay, the court denies all attorney's fees incurred in prosecuting that motion. Should Outrigger be successful in the adversary, Outrigger shall submit a statement of fees and costs to this court for review and approval.

To the extent that these Findings of Fact constitute Conclusions of Law, they shall be so considered.

## CONCLUSIONS OF LAW

There are three (3) issues before this court:

I. Was the Lease assumed within the period of time allowed by statute?

II. Was there proper manifestation of intent to assume?

III. What is the amount of the pre-petition defaults that Debtor must cure?

I. Was the Lease Assumed within the Period of Time Allowed by Statute?

1. This court held in *In re House of Emeralds, Inc.*, 57 B.R. 31 (Bkrtcy D.Hawaii) (1985) [*"House of Emeralds"*] that an assumption of a lease must occur, absent exceptional circumstances, within the period of time set for assuming the lease. This meant that the motion to assume had to be filed *and* heard within that period of time. *Id.* at 35.

2. This court did recognize that, under some circumstances, a motion to assume a lease could be heard after the period of time to assume had expired, provided that a timely motion was filed. *Id.* at 36.

3. *House of Emeralds* relied on *In re By-Rite Distributing, Inc.*, 47 B.R. 660 (Bkrtcy.D.Utah 1985) [*"By-Rite I"*] for the proposition that a motion to assume must be filed and heard within the period of time allowed for assumption. On appeal, the district court reversed *By-Rite I*. *See In re By-Rite Distributing, Inc.*, 55 B.R. 740 (D.C.Utah 1985) [*"By-Rite II"*].

4. *By-Rite II* is a well-reasoned opinion by Chief District Judge Jenkins. In reversing *By-Rite I*, the court stated:

> The court concludes that the trustee assumes or rejects the lease within the meaning of section 365(d)(4) when he makes up his mind to do so and communicates his decision in an appropriate manner, such as by filing a motion to assume. The assumption may become effective only after the court approves it. It is, in effect, subject to defeasance by the court. But the trustee's act of assuming the lease is complete for purposes of section 365(d)(4) before the trustee ever obtains court approval.... And according to the statute, it is only the trustee's action that must occur within sixty days. Accord In re Bon Ton Restaurant & Pastry Shop, Inc., 52 B.R. 850 (Bankr.N.D.Ill.1985). The express language of the statute imposes no such deadline for the court's action. (footnote omitted) *By-Rite II* at 742–43.

*See also In re Re-Trac Corp.*, 59 B.R. 251 (Bkrtcy.D.Minn.1986)

5. *By-Rite II* noted that, if court approval of the assumption was required within the period of time allowed for assumption, the legislative intent that the trustee have sixty days to make up his mind on whether to assume or not would be defeated. Specifically,

> [i]f the trustee had to get court approval within the sixty days, he would have to decide whether or not to assume the lease and file his motion for assumption much earlier, to allow time for the required notice, the filing of any objections and the required hearing. *See* Bankruptcy Rule 6006. In complex cases especially such a requirement would unduly tax the trustee, who must also calculate assets and debts, determine creditors and file schedules soon after the filing of the petition. The result would likely be that trustees would routinely file for extensions of the sixty-day period, leading to

the very evil that section 365(d)(4) was meant to cure—costly delay. *Id.* at 745.

6. This court is persuaded by the reasoning of Chief District Judge Jenkins in *By-Rite II* that legislative history does not support a rule requiring that motions to assume be heard before the time to assume had expired.

7. Thus, this court holds that, when the trustee (or Debtor-in-possession) unequivocally communicates to the lessor and the court its intent to assume a lease, and this is communicated prior to the expiration of the time to assume or reject, the lease will not be deemed automatically rejected even though the hearing is not held until after the period for assumption has expired, provided that the hearing is held within a reasonable time as permitted by the court's calendar.

8. To the extent that *House of Emeralds* is at odds with this conclusion, *House of Emeralds* is hereby overruled.

## II. Was There Proper Manifestation to Assume the Lease?

1. Outrigger contends that Debtor's filing a Motion to Conditionally Assume Lease is not an unequivocable act to assume the lease. Outrigger specifically cites *In re 1 Potato 2, Inc.*, 58 B.R. 752 (Bkrtcy.D.Minn.1986) and *In re Re-Trac Corp.*, 59 B.R. 251 (D.Minn.1986).

2. Under the Bankruptcy Act, a trustee could assume a lease by some action short of filing a motion to assume. *See e.g. In re Steelship Corp.*, 576 F.2d 128 (8th Cir. 1978); *In re McCormick Lumber & Manufacturing Corp.*, 144 F.Supp. 804 (D.Oregon 1956).

3. However, under the Bankruptcy Code, the courts are split over whether a trustee can assume a lease by action short of filing of a motion to assume a lease. Compare *In re Kelly Lyn Franchise Co.*, 26 B.R. 441 (Bkrtcy.M.D.Tenn.) *affirmed* 33 B.R. 112 (M.D.Tenn.1983) with *In re Ro-An Food Enterprises, Ltd.*, 41 B.R. 416 (E.D.N.Y.1984).

4. This court follows the majority rule that unequivocal intention is shown only when a motion to assume is filed before the period to assume expires. Here Debtor filed a motion to assume before the period of expiration. This act is unequivocal and directly gave Outrigger notice that Debtor intended to assume the lease with Outrigger. Compare this to *In re Re-Trac Corp.*, 59 B.R. 251 (Bkrtcy.D.Minn.1986) where the debtor argued (and lost) that a phone call from its chief executive officer and the payment of rent was sufficient to show its intention to assume.

5. Debtor, in its Motion to Conditionally Assume Lease gave the name of the landlord as Cinerama Hawaii Hotel. This is actually the name of the hotel, and the landlord's name is Outrigger Hotels Hawaii, who operates the hotel. Outrigger raised no evidence that it was misled by the confusion in the names, and thus is deemed to have waived this defect. In any event, Outrigger vigorously opposed the motion to assume and sought to have the automatic stay lifted so that it could evict Debtor and obtain possession of the property.

6. A more troubling issue is that Debtor claims that it is entitled to off-sets based on alleged losses and damages resulting from an alleged conspiracy to oust the Debtor from the hotel. As stated in *In re 1 Potato 2, Inc.,* 58 B.R. 752, 754–55 (Bkrtcy.D.Minn.1986):

> the trustee or debtor in possession may assume or reject an executory contract or unexpired lease by clearly communicating in an unequivocal manner its intentions to either assume or reject to the lessor. The trustee or debtor-in-possession *must manifest an unconditional and unambiguous decision. In re Bon Ton Restaurant, supra* [52 B.R. 850] at 854. Section 365(d)(4) provides that the trustee or debtor must so communicate its intentions within 60 days, or within such additional time as the court, for cause, may order following notice and hearing on the trustee's or debtor's motion for extension of time to assume or

reject held within 60 days of the filing of the petition. (emphasis added).

7. In *By-Rite II,* the court stated:

In light of the legislative history, the bankruptcy court's desire to protect lessors is understandable. But there is simply no indication that Congress intended to protect lessors from all problems incident to a tenant's filing a petition in bankruptcy. All creditors-including landlords-should expect some loss, delay or inconvenience. Other provisions of the Code minimize the adverse effects to lessors that any delay in obtaining court approval of an assumption might cause them. Section 365(d)(3), for example, which was also added by the 1984 amendments, requires the trustee to perform all the debtor's obligations under the lease that arise between the order for relief and assumption. The trustee must perform these duties at the time required in the lease. For cause the court may extend the time for performance of obligations due within the first sixty days after the order for relief, but it may not extend the time beyond that sixty-day period. So the lessor must be paid by the end of the sixty days, regardless of the trustee's decision. Moreover, the trustee may not assume a lease unless, at the time of assumption, he cures any default and compensates the lessor for "any actual pecuniary loss" resulting from such default (or provides "adequate assurance" that he will do so) and provides adequate assurance of future performance under the lease. 11 U.S.C.A. § 365(b)(1). these protections for lessors answer one of Congress's concerns in imposing the sixty-day limit of section 365(d)(4) and obviate in part the need for hasty judicial confirmation of the trustee's decision to assume the lease.

8. An executory contract (including a lease) must be assumed in its entirety. A debtor may not pick and choose those portions that it wishes to enforce and reject those that it does not deem desirable. That is black letter law engraved in stone. *See e.g. In re Rovine Corp.,* 6 B.R. 661 (Bkrtcy. W.D.Tenn.1980); *In re Storage Technolo-*

*gy Corp.,* 53 B.R. 471 (Bkrtcy.D.Colo.1985). Moreover, an agreement may not be construed as a series of separate agreements if they are interdependant. *See e.g. In re Holland Enterprises, Inc.,* 25 B.R. 301 (E.D.N.C.1982).

■ 9. In the case at hand, Debtor has assumed the whole lease, and not just a portion. In this respect, the assumption is unconditional. The fact that Debtor claims that it is entitled to offset does not alter the nature of the assumption. Further, as noted in III. below, this court is requiring Debtor to deposit the full amount of the pre-petition arrearages into a special interest-bearing account, and to timely perform all post-petition obligations. Accordingly, this court holds that Debtor's Motion to Conditionally Assume lease was an unequivocal assumption of the lease.

III. What Is the Amount of the Pre-petition Defaults that Debtor Must Cure?

1. 11 U.S.C. Section 365(a) and (b)(1) states:

(a) Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

(b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default;

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease.

■ 2. Thus, upon assuming the lease, Debtor becomes liable on the entire lease as if bankruptcy had not intervened. *See e.g. In re Airlift International, Inc.*, 761 F.2d 1503 (11th Cir.1985).

■ 3. Although under normal circumstances, the Debtor would be required to pay all arrearages directly to the lessor, because of the claims of set-off against the lessor, the court will order the amounts necessary to cure the defaults to be placed in a special interest-bearing account. No disbursements from this account shall be made without prior court approval.

### A. *Utility Payments.*

1. Outrigger directed Debtor to pay directly to the utilities the utility charge of 3% of gross sales pursuant to Section CC(2) of the lease. Debtor did so, but several checks were returned unpaid. Outrigger paid the amount of these checks. Debtor argues that Outrigger did so at its own risk. The court finds this argument unpersuasive.

2. There is only one electric meter for the Reef Hotel, and all of Debtor's payments received were credited to Outrigger's account at Hawaii Electric. When Debtor's checks were returned unpaid, Outrigger was required to cover these checks or face a loss of service for the entire hotel.

3. Debtor argues that Outrigger had Debtor pay the utility charge under the lease directly to Hawaiian Electric to avoid the 4% Hawaii Gross Income Tax. Regardless of whether that assertion is true or not (and this court does not decide on the veracity of that statement), Outrigger had the right to designate Hawaiian Electric as the place of payment. The court finds that there was no absolute assignment. Accordingly, Debtor is directed to deposit in the special account $35,744.65 which includes a pro-rated amount for the period May 1–8, 1986.

4. Outrigger also claims that it is entitled to $80.00 in bank processing charges for checks that were made payable to Hawaiian Electric but returned unpaid due to insufficient funds. Debtor is to pay with checks that are valid, not with checks that are "bounced." Debtor is required to deposit in the special account $80.00.

### B. *Pre-petition Rent*

1. Pursuant to Section C of the Lease, Debtor owes pre-petition lease rents in the amount of $24,176.19. Debtor has already deposited into the special account $22,000.00. Debtor thus must deposit an additional $2,176.19 into the special account to cure the pre-petition lease rents.

2. Debtor also owes $20.00 for bank processing charges on a check that was returned unpaid for post-petition rent.

3. Debtor also must deposit into the special account the amount of $9,159.89 which arose from errors in calculations or other adjustments to the rents and charges.

### C. *Interest*

1. In *In re Mays*, 30 B.R. 769, 771–72 (Bkrtcy.S.D.N.Y.1983), the court stated:

> Although ... the Bankruptcy Code adopts the accepted proposition that there is a suspension of the accrual of interest as of the date of the filing of the petition, such rule applies to claims filed against the debtor as distinguished from defaults to be cured under assumed executory contracts.
>
> The cure of a default under an unexpired lease pursuant to 11 U.S.C. § 365 is more akin to a condition precedent to the assumption of a contract obligation by a debtor than it is to a claim in bankruptcy. One of the purposes of Section 365 is to permit the debtor to continue in a beneficial contract provided, however, that the other party to the contract is made whole at the time of the debtor's assumption of said contract. (footnote omitted).

2. Section C(4) of the Lease requires debtor to pay interest at the rate of 10% per annum on the unpaid lease rent and utility charge payments. Debtor argues that interest should not be allowed since

the payment is not yet due, since there are claimed offsets.

3. To provide adequate assurance that Debtor will cure all defaults in the event that Debtor is unsuccessful in its claim against Outrigger, this court orders Debtor to deposit into the special account a sum sufficient to insure that Outrigger will be paid the 10% per annum interest on the unpaid lease rent and utility charges should Debtor fail in its claim against Outrigger.

4. Outrigger and Debtor are instructed to use good faith in determining the amount of interest to be so deposited and, if the efforts fail, shall return to this court to determine the amount.

### D. *Room Processing Charges*

1. Outrigger claims that it is entitled to room processing charges in the amount of $4,784.55, pursuant to Section H of the Lease. These room processing charges occur when hotel customers charge their food and beverage bills to the hotel room.

2. The charges represent the actual cost of providing this service to Debtor, plus an estimated amount for bad debt charge-offs.

3. This court concludes that these services benefitted Debtor and properly falls into the ambit of Section H (the indemnity agreement) of the Lease. Clearly, the claim arises from Debtor's use of the premises and the conduct of its business.

4. Debtor claims it is entitled to offset against this claim the cost of meals provided to Outrigger employees. However, Debtor did not produce any evidence as to the amount of the offset to which it is entitled. Thus, no offset is allowed for this claim.

5. Debtor is required to deposit $4,784.55 in the interest bearing account.

### E. *Attorney Fees*

1. "[A]n attorney's fee clause in a lease is to indemnify the landlord, if he prevails, against the necessity of paying legal expenses...." *In re Bulluck*, 17 B.R. 438, 439 (9th Cir. BAP 1982).

2. Leases which contain a specific provision requiring debtor to pay lessor's attorney fees in the event of default have been held valid where the provision is reasonable and is not in the nature of a penalty or forfeiture. *See In re Bulluck*, 17 B.R. 438 (9th Cir. BAP 1982); *In re Mays, Inc.*, 30 B.R. 769 (Bkrtcy.S.D.N.Y.1983).

3. This court concludes that section DD(J) of the Lease, when read in light of Section DD(4) of the Lease, requires the Debtor to pay lessor's attorney fees in the event of a default, if lessor is successful. Further, under Section H (indemnity Agreement), Debtor is liable to the lessor for attorney fees if there has been a default in the performance of any obligation under the lease.

4. This court still has a duty to determine the reasonableness of the fees. *See Matter of Ribs of Greenwich Village, Inc.*, 57 B.R. 319 (Bkrtcy.S.D.N.Y.1986); *In U.S. v. Bedford Associates*, 548 F.Supp. 748, 751 (S.D.N.Y.1982), the court stated:

> Reasonable attorneys' fees * * * are such as are necessary to accomplish the end sought considering the skill and experience of counsel, the magnitude, complexity and novelty of the litigation, the respective positions of the parties in the litigation and the extent of responsibility legitimately undertaken by counsel.

5. And, as stated in the *Matter of Nicfur-Cruz Realty Corp.*, 50 B.R. 162, 169 (Bkrtcy.S.D.N.Y.1985),

> It is inherently unreasonable to ask a debtor to reimburse attorneys' fees incurred by a creditor that are not cost-justified either by the economics of the situation or necessary to preservation of the creditor's interest in light of the legal issues involved.

6. All totaled, Outrigger seeks $15,078.20 in attorney fees and $334.78 in costs for a total of $15,412.98.

7. This court first notes that Outrigger was not successful in all of its actions. Specifically, it was not successful in its Motion for Relief from Automatic Stay and for Adequate Protection, and in its Filing of a Motion to Alter or Amend Findings

and Judgment, Or in the Alternative, Motion for Reconsideration. It has been successful, however, in establishing the amount of the default that debtor must cure.

8. This court concludes that the amount of attorneys' fees sought is excessive, and therefore reduces the requested fees to $8,000.00, plus costs incurred. The court notes that substantial amount of time claimed by Outrigger appears to be duplicative of the several attorneys involved, appear to be in research and thus self-education, and excessive time appears to be involved in evaluation of the case. Debtor shall deposit said amount into the special account.

Debtor is given 14 days from the date of the order to deposit the amount above-mentioned into the special account. The amount of interest on the unpaid lease rent and utility charges will be paid within 7 days after the amount is determined by Debtor and Outrigger or the court.

An Order will be signed upon presentment.