In re **WESTWORLD COMMUNITY HEALTHCARE, INC., a Delaware corporation, and affiliates, and Westworld Community Healthcare, Inc., a California corporation, and affiliates, Debtors.**

**Bankruptcy No. SA 87–03985 JR.**

United States Bankruptcy Court, C.D. California.

Jan. 10, 1989.

As Amended Feb. 7, 1989.

Stanley E. Goldich of Pachulski, Stang & Ziehl, Los Angeles, Cal., for District.

John J. Bingham of Danning, Gill, Gould, Diamond & Spector, Los Angeles, Cal., for trustee.

## MEMORANDUM OPINION

JOHN E. RYAN, Bankruptcy Judge.

Trustee in this Chapter 11 case seeks authority to disburse certain proceeds from the sale of property located at Bear Valley Community Hospital (the "Motion"). Trustee intends to pay various equipment lessors to cure certain pre- and post-Chapter 11 defaults due lessors on various equipment leases with debtor or the Bear Valley Community Hospital District (the "District"). Trustee opposes the District's

demand for reimbursement of its attorneys' fees aggregating approximately $130,000 and $10,000 paid for the preparation of "A REQUEST FOR PROPOSALS" ("RFP") used to market the Bear Valley Community Hospital (the "Hospital") to potential purchasers. Trustee also opposes the District's demand for $50,000 to provide "tail" insurance coverage against medical malpractice claims. I heard the Motion on October 11, 1988, asked the parties to submit supplemental pleadings and took the matter under submission.

## JURISDICTION

This court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334(a) (the district courts shall have original and exclusive jurisdiction of all cases under Title 11), 28 U.S.C. § 157(a) (authorizing the district courts to refer all Title 11 cases and proceedings to the bankruptcy judges for the district) and General Order No. 266, dated October 9, 1984 (referring all Title 11 cases and proceedings to the bankruptcy judges for the Central District of California). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (M).

## STATEMENT OF FACTS

Trustee seeks authority to retain the proceeds from the sale of the Hospital (the "Proceeds") after paying certain equipment lessors and their pre- and post-Chapter 11 claims. The District demands reimbursement from the Proceeds for its attorneys' fees totaling approximately $130,000. In addition, the District seeks reimbursement for its payment of $10,000 to Inland Counties Health Systems Agency ("Inland") for the RFP.[1]

The District also seeks payment of $50,000 into a trust fund to protect it against potential malpractice claims. According to the District, debtor and trustee failed to

---

**1.** The RFP summary stated that:

"The Bear Valley Community Hospital District requests responsible entities to submit proposals for the operation of the Bear Valley Community Hospital, a 28–bed general acute care hospital located in the city of Bear Lake in San Bernar-

dino County. Proposals are to be submitted to the Westworld Community Healthcare, Inc. U.S. Bankruptcy Trustee, Mr. James Joseph, preferably with the consultation in support of the Hospital District Board of Directors."

provide insurance coverage as required under the Hospital lease, dated August 7, 1984, for the operation of the Hospital (the "Lease"). Specifically, the District contends that the insurance obtained by trustee does not cover claims made after July 17, 1987 for actions by debtor under the Lease occurring before July 17, 1987. In lieu of the security deposit, the District asks that trustee purchase coverage for this alleged risk.

Before the Hospital was sold to St. Bernardine Medical Center ("St. Bernardine"), trustee and the District had entered into an agreement dated November 20, 1987 (the "Letter Agreement"). By the terms of the Letter Agreement, after paying certain obligations, trustee is required to reserve from the Proceeds $100,000 to secure the District's claims for reimbursement of attorneys' fees and other costs.

Trustee objects to the District's demands. It disputes the District's demand for reimbursement of attorneys' fees on the grounds that (i) the District is not the "prevailing party" in any disputes over the Lease; (ii) the attorneys' fees incurred by the District did not arise as a result of any default under the Lease; (iii) the amount is unreasonable because the services were unnecessary and duplicative; and (iv) any recovery for attorneys' fees must be limited to the reserve of $100,000, less the payment of $15,037.20 to equipment lessors.

Trustee next objects to any payment from the Proceeds to reimburse the District for its payment to Inland on the RFP because this payment was not necessary to cure a default under the Lease.

Lastly, trustee objects to any deposit of $50,000 as a surety to protect the District from any medical malpractice claims otherwise not covered by insurance because trustee has adequate insurance in place.

In order to clarify the issues before me it is necessary to understand the background of this case. Debtor filed for relief under Chapter 11 on June 30, 1987. Prior to the Chapter 11 filing, debtor was engaged in the business of operating a nationwide network of hospitals and medical clinics. On July 14, 1987, trustee was appointed.

One of the hospitals owned and operated by debtor was the Hospital. Debtor operated the Hospital under the terms of the Lease.

Immediately after his appointment, trustee determined that the estate did not have funds to operate its hospitals, including the Hospital, beyond July 15, 1987. Trustee, therefore, notified the District by telegram dated July 10, 1987 that the Hospital's operation would be terminated on July 15, 1987 unless the Hospital was sold or an operating agreement was executed with some entity. The telegram also informed the District that it could oppose the closure by bringing an *ex parte* hearing.

The District moved for a hearing, but before the hearing took place, the District and trustee entered into an interim operating agreement ("IOA"). Under the IOA, the District agreed to operate the Hospital on an interim basis for and on behalf of trustee.

The IOA gave trustee the opportunity to preserve the estate's interest in the Hospital. The later sale to St. Bernardine verified trustee's actions with a resulting payment to the estate of approximately $400,-000. This payment represented the value of the equipment and the property constituting the Hospital. It did not represent any value for the Lease. The District consented to the sale after entering into the Letter Agreement with trustee.

## DISCUSSION

In support of its demands, the District cites § 365(b)(1) of the Bankruptcy Code which provides that:

If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default;

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debt-

or to such contract or lease, *for any actual pecuniary loss to such party resulting from such default.* (Emphasis added)

11 U.S.C.A. § 365 (West Supp.1988).

■ The District asserts that under § 365(b)(1)(B) trustee is required to compensate it for "any pecuniary loss" resulting from "any defaults" under the Lease. The District cites *In re Bullock,* 17 B.R. 438 (9th Cir.BAP 1982), and *In re Bon Ton Restaurant and Pastry Shop, Inc.,* 53 B.R. 789 (Bankr.N.D.Ill.1985), for this proposition.

According to the District, *Bullock* establishes the applicable standard for awarding attorneys' fees under § 365(b)(1)(B). It interprets *Bullock* to say that unless overreaching is established, the fees and expenses should be paid. Trustee responds that the attorneys' fee clause in the Lease governs and limits reimbursement to fees incurred by the "prevailing party".[2] Furthermore, the fees must be reasonable.

The parties raise some interesting legal issues that deserve analysis. The District contends that the attorneys' fee clause is irrelevant. In other words, the District has a right to reimbursement for attorneys' fees irrespective of the attorneys' fee clause in the Lease. Although I was unable to find a case in which attorneys' fees were awarded without an attorneys' fee clause, the imposition of such a contingency is inconsistent with the statutory language in § 365(b)(1)(B).[3] Section 365(b)(1)(B) broadly compensates for "... any actual pecuniary loss ... resulting from such default." 11 U.S.C.A. § 365 (West Supp.1988). It was designed to limit a trustee's power to assume. With this in mind, a narrow interpretation of compensation would be inconsistent with the purpose of this provision.

Since the Lease contains an attorneys' fee clause, trustee argues that it should limit any payment to the District. Judge Elliott stated in *Bullock* that:

> The purpose of § 365(b)(1)(B) is to indemnify the other party to the contract or lease being assumed, against loss. The purpose of an attorney's fee clause in a lease as well as an attorney's fee clause in a security agreement is the same, to indemnify the lessor or secured party against legal expenses incurred by reason of the other party's default.

*Bullock* 17 B.R. at 439. In *In re Foreign Crating, Inc.,* 55 B.R. 53 (Bankr.E.D.N.Y. 1985), the landlord demanded attorney's fees for the preparation of its motion to compel debtor to assume or reject the lease and for its answer to the motion. Landlord referred to a lease provision providing for attorneys' fees for any suit or action as a result of the lessee's default. *Id.* at 54. The court held that attorneys' fees "constitute a pecuniary loss resulting from debtors (sic) default pursuant to 11 U.S.C. § 365(b)(1)(B), and such fees must be recompensed by the debtor before it may assume its lease." *Id.* In other words, § 365(b)(1)(B) provides a separate right of compensation for loss related to a default under an assumed lease. The right is activated by a showing of loss resulting from or in connection with a default. Accordingly, the attorneys' fee clause does not limit indemnity under § 365(b)(1)(B).

The next issue is whether the attorneys' fees must be reasonable. The District asserts a right to reimbursement of attorneys' fees subject only to overreaching and without regard to the reasonableness of the services or the fees. In support of its position, the District argues that *Bullock* rejects the reasonableness test by supporting full indemnity under § 365(b)(1)(B). The District points out that the only limitation in *Bullock* is language to the effect

---

**2.** The attorneys' fee clause in the Lease provides that "In the event either party commences litigation for the breach of, for a declaration of the rights or duties of the parties, or for any other reason relating to this Agreement, the prevailing party shall be entitled to reasonable attorney's fees. The 'prevailing party' shall be deemed to

be the party entitled to recover its costs." Hospital Lease Agreement, p. 19.

**3.** *Contra. In re J.W. Mays, Inc.,* 30 B.R. 769 (Bankr.S.D.N.Y.1983), which holds that without a specific attorneys' fee clause reimbursement is not available under § 365.

that the landlord does not have a "blank check upon the estate of the debtor for attorney's fees." 17 B.R. at 439.

In *Bullock*, Judge Elliott quotes *In re Bain*, 527 F.2d 681 (6th Cir.1975), that "... the tests of reasonableness of the fees are not to be found in bankruptcy precedents...." 17 B.R. at 439. A closer look at *Bain*, however, discloses that the instructions to the bankruptcy court on remand were to determine what was paid and then "determine whether the charges were reasonable". 527 F.2d at 687.

In support of trustee's argument, courts have overwhelmingly applied the reasonableness test. See *Bon Ton Restaurant*, 53 B.R. at 789, *In the Matter of Ribs of Greenwich Village, Inc.*, 57 B.R. 319 (Bankr.S.D.N.Y.1986), *In re Diamond Head Emporium, Inc.*, 69 B.R. 487 (Bankr. D.Haw.1987), *In re Westview 74th St. Drug Corp.*, 59 B.R. 747 (Bankr.S.D.N.Y. 1986), *In re A. Tarricone, Inc.*, 70 B.R. 464 (Bankr.S.D.N.Y.1987), and *Foreign Crating, Inc.*, 55 B.R. at 53. Accordingly, I will determine the reasonableness of the attorneys' fees in light of all the circumstances.

■ In my view, the following three-prong test should apply when approving reimbursement of attorneys' fees in connection with an assumed lease: (i) Does the expense directly or indirectly relate to a default under the lease; (ii) if so, was the expense necessary to cure the default, adequately protect the landlord against future defaults, or indemnify the landlord against loss; and (iii) if so, was the expense reasonable under the cirumstances?

The District has submitted invoices from two law firms and county counsel to support its request for reimbursement of attorneys' fees. Pachulski, Stang & Ziehl ("PS & Z") was retained in July, 1987 as special bankruptcy counsel to the District during the pendency of the case. The District was additionally represented by its corporate and general counsel, Musick, Peeler & Garrett ("MP & G").

PS & Z, MP & G and county counsel submitted billing statements for services rendered between July 1987 and June 1988 relating to the Hospital totaling $109,-118.99 of which approximately $103,000 represented costs for services related to the Lease and Lease defaults that were the subject of disputes between the District and the trustee. According to the applicants, the balance of the time involved services relating to the District's operation of the Hospital under the Interim Operating Agreement. During the period July through October, 1988, an additional $20,-000 in services were rendered by PS & Z and MP & G ($18,000 and $2,000, respectively) relating to Lease default claims.

Trustee cites certain actions taken by the District as unnecessary and unrelated to any default. These actions included (i) the filing of an *ex parte* application to compel the trustee to operate the Hospital; (ii) the District's attempts to terminate the Lease including its opposition to the motion to extend time for trustee to assume or reject the Lease; and (iii) the filing of a motion for relief from the automatic stay. Trustee also argues that the description of services is inadequate and where there is itemization of services, it shows many general and routine administrative matters totally unrelated to defaults under the Lease. The trustee points out the attendance of attorneys at various medical and staff meetings and board of directors meetings. Additionally, trustee argues that the services are duplicative and excessive. For example, there are in excess of 70 telephone conferences between Mr. Stanley E. Goldich of PS & Z and Mr. Michael Borders of MP & G.

It is very difficult to determine exactly what services were necessary to protect the interests of the District under the Lease. Upon receipt of trustee's telegram informing it that trustee did not intend to operate the Hospital after July 15, 1987, the District was faced with an emergency situation and had to react immediately. The preparation of papers seeking an order of this court requiring the trustee to continue to operate the Hospital in my view was an appropriate action to take. It was an action necessitated by the anticipatory breach of trustee of the Lease. The District was in a no-win situation. It did not

want to operate the Hospital, but it had an obligation to the community to provide medical care. The only viable option the District had to keep the doors of the Hospital open was to operate the Hospital for the benefit of trustee pursuant to the terms of the IOA. I do not believe by entering into the IOA the District intended to waive any rights it had for indemnification of losses resulting from trustee's anticipatory breach of the Lease. In the same light, I do not believe trustee assumed any liability for operating losses resulting from the ongoing operation of the Hospital.

I am concerned about the actions of the District in fighting trustee's motion to assume the Lease. Clearly, trustee has a fiduciary duty to preserve assets of the estate. Trustee did a magnificent job in this case in doing just that. Once the IOA was consummated, I do not understand the justification for ongoing litigation. My concern is further compounded by the filing of a motion for relief from the automatic stay after it appeared a sale of the Hospital to St. Bernardine was in prospect. The District also sought a 2004 exam when it appears the interests of the District and trustee were the same, the sale of the Hospital as quickly as possible. Although these services relate to trustee's anticipatory breach of the Lease, they were not necessary to cure the default, adequately protect the District against future defaults or indemnify the District against loss.

For these reasons, I am reducing the award of attorneys' fees by $15,000. I cannot with precision determine the exact amounts spent on these matters because the descriptions of services are inadequate in many instances, but I am confident that conservatively speaking at least $15,000 in billings related to those services that I hold unnecessary. The remaining services performed for the District relate to the default, were necessary to protect the interests of the District and appear reasonable in amount taking into consideration all the circumstances. Accordingly, trustee is ordered to reimburse the District $108,000 in attorneys' fees.

With respect to the District's request for reimbursement of the $10,000 spent for the preparation of the RFP, I hold this reimbursable to the District as an expense satisfying the above three-prong test. The expense was necessary and very helpful in promoting and selling the Hospital. It was certainly a contributing factor in the successful sale of the Hospital to St. Bernardine.

Lastly, I deny the request for payment of $50,000 to offset any claims resulting from the alleged failure of trustee to provide appropriate insurance for the Hospital. In the first place, I believe trustee did provide sufficient insurance coverage. Secondly, the claim is contingent and unliquidated. Therefore, even if I thought trustee was in default under the Lease, I do not have sufficient information to make an award pursuant to § 365(b)(1)(B).

Separate findings of fact and conclusions of law with respect to this ruling are unnecessary. The within memorandum opinion shall constitute my findings of fact and conclusions of law.