**In re F & N ACQUISITION CORP., F & N Holding, Inc., F & N Real Estate, Inc., V & S I Real Estate Limited Partnership, and V & S II Real Estate Limited Partnership, Debtors.**

**Bankruptcy No. 91–6866 to 91–06870.**

United States Bankruptcy Court,
W.D. Washington,
at Seattle.

March 1, 1993.

Diane K. Carey, Karr Tuttle Campbell, Seattle, WA, for debtors.

David R. Riley, Seattle, WA, for Titanic Associates.

## MEMORANDUM OPINION

SAMUEL J. STEINER, Chief Judge.

This matter is before the Court on the motion of Titanic Associates, one of the debtor's former landlords, for reconsideration of an Order sustaining the debtor's objection to its claim.

## FACTS

On August 6, 1991, the debtor's predecessor, as lessee, entered into a lease agreement with Titanic whereby the lessee became an anchor tenant in Titanic's mall located in Everett, Washington. The lease contained an operating covenant requiring the lessee to operate a department store on the premises for a period of twenty years. The debtor filed this Chapter 11 case on September 17, 1991, and ceased operations at the Everett location on September 20, 1991. On November 5, 1991, an Order was entered authorizing the debtor to assume the lease and assign it to Mervyn's. The Order required cure of monetary defaults, reserving Titanic's claim to additional damages. On October 18, 1991, Titanic entered into a letter agreement with Mervyn's which authorized remodeling and renova-

tion and fixed July 31, 1992, as the date of occupancy.

Titanic filed a proof of claim alleging an estimated $4 million in damages arising from the debtor's breach of the operating covenant. The claim included damages arising from the vacancy existing after the debtor ceased operations until Mervyn's took possession, and expenses purportedly related to the transfer to Mervyn's. The debtor objected to the claim. In sustaining the objection, this Court concluded that the lease does not provide for damages for breach of the operating covenant, and further that Section 365(b)(1)(B) of the Bankruptcy Code does not provide an independent ground for recovery.

The motion for reconsideration is based on three grounds. First, Titanic contends that it is entitled to damages under Article XXIX of the lease. Second, Titanic asserts that the limitation of damages contained in the lease should be declared null and void since its ability to pursue its limited remedies under the lease was frustrated by the debtor's conduct. Finally, Titanic maintains that § 365(b)(1)(B) provides a statutory basis for damages that is independent of the lease.

## MOTIONS FOR RECONSIDERATION— STANDARDS

CR 7(e)(1), Local Rules W.D.Wash., provides as follows:

(e) Reconsideration of Motions

(1) Standards. Motions for reconsideration are disfavored. The court will ordinarily deny such motions in the absence of a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence.

Titanic has not demonstrated any manifest error in the prior ruling or shown new facts or legal authority which could not have been brought to the Court's attention earlier with reasonable diligence. Each of the arguments advanced in Titanic's motion for reconsideration was raised in its original response to the debtor's objection to its claim.

Accordingly, the motion should be denied on this basis alone. However, due to the importance of the issues, the Court will discuss each of Titanic's legal theories.

## DAMAGES UNDER ARTICLE XXIX OF THE LEASE

■ Under Article XXIX, the remedy for default of any provision of the lease is termination of the lease or reentry and reletting. The same article provides that *"[n]o action shall be maintained* against Tenant by Landlord ... on account of this Lease *except* (i) for the recovery of the specific sums required to be paid by Tenant by the express terms of this Lease, (ii) *for the recovery of the damages and other relief provided for in this Article XXIX,* and (iii) to enjoin Tenant from performing an act prohibited by the express provisions of this Lease" (emphasis added). The only damages provided for by Article XXIX are *"the reasonable cost of obtaining possession of the F & N Store and reletting same,* including, but not limited to, advertising costs, commission for reletting, legal, architectural and other professional fees, and any repairs and alterations necessary to prepare it for reletting" (emphasis added).

Monetary defaults were cured when the lease was assumed and assigned, and Mervyn's paid the rent and other monetary obligations from that point forward. The only other damages authorized under the lease are the expenses incurred in reentry and reletting. Since this remedy was not exercised, the damages claimed by Titanic are expressly disallowed by the terms of the lease.

Titanic contends that Article XXIX should be read to permit recovery of expenses incident to any transfer of the tenancy, not solely a transfer resulting from the landlord's retaking. Thus, without conceding that the lease may not permit the full panoply of consequential damages flowing from the vacancy of the store, Titanic asserts that it is at least entitled to damages of the type listed in Article XXIX. In this regard, Titanic requests recovery of

approximately $91,700, based on the following:

1) attorney's fees—$20,000;

2) maintenance in connection with the transfer to Mervyn's—$14,200;

3) security costs incurred between the time F & N vacated and Mervyn's took possession—$20,000;

4) administrative expenses in connection with the transfer to Mervyn's—$22,500; and

5) advertising/marketing incurred "to preserve the Everett Mall as a viable entity until such time as Mervyn's could commence business operations"—$15,000.

Titanic's request must be denied. The lease limits damages strictly to the actual expenses involved in retaking and reletting, and there is nothing in the language of Article XXIX or any other term of the document that supports a more expansive construction.

## ENFORCEABILITY OF DAMAGES LIMITATION CLAUSE

■ Titanic asserts that the limitation of damages contained in Article XXIX should be declared null and void, since its ability to pursue its limited remedies under the lease was frustrated by the debtor's conduct. In an analogous argument, Titanic contends that the parties did not intend that the damages limitation clause apply to a breach of the operating covenant. There is no basis for this result. From the language of the lease as well as the circumstances of the parties, it is evident that a breach of the operating covenant was intended to be an event of default only and not a basis for damages.

First, there is no reason to conclude that the parties intended to treat a breach of the operating covenant any differently from any other kind of breach. The lease provides the landlord with the same remedies whether the debtor fails to pay rent or abandons the premises. The damages attributable to retaking and reletting would be the same whether triggered by an abandonment or a default in rent. Whether the parties in fact contemplated a breach of the operating covenant is thus irrelevant. What is clear is that they intended a strict limitation on damages in the event of a default of any kind.

Further, assuming the debtor had abandoned its operations outside of bankruptcy, the store could have been dark for many months before the landlord could have relet the premises. In that event, the landlord's damages would have been limited to the expenses of retaking and reletting. Yet Titanic argues that it should be entitled to damages in the bankruptcy case which it would not have been allowed had the breach occurred outside of the bankruptcy context. This notion violates the basic principle that a creditor in bankruptcy is entitled to no greater rights than his contract allows. As stated by the Court in *In re Bon Ton Restaurant & Pastry Shop, Inc.*, 53 B.R. 789 (Bankr.N.D.Ill.1985):

> What the Code requires is that the lessor be given the performance for which he has contracted (citation omitted). It is not intended that a non-debtor party should acquire greater rights in a case under the Code than he has outside the Code.... A Lessor cannot insist that bankruptcy law gives him what the lease itself does not....

*Id.* at 804.

■ Finally, the very size and nature of Titanic's $4 million claim demonstrate the purpose of the damages limitation clause. Shopping centers pose advantages and risks for landlords and tenants alike, and the potential damage from the failure of an anchor tenant was well known to both sides. In fact, it is not uncommon for a lease to prescribe damages in the event that a tenant "goes dark." *See, e.g. In re Joshua Slocum, Ltd.*, 103 B.R. 601 (Bankr. E.D.Pa.1989); *In re Food City, Inc.*, 95 B.R. 451 (Bankr.W.D.Tex.1988). By limiting the damages to the lessor, the parties agreed, either expressly or tacitly, to apportion the risk rather than placing it all on the anchor tenant. The debtor's predecessor apparently had sufficient bargaining power to obtain this clause. It is not ambiguous, and it is not inconsistent with any other part of the lease. Hence there is no

reason to go beyond the document to ascertain the intent of the parties.

### SECTION 365(b)(1)(B) AS AN INDEPENDENT COURSE OF DAMAGES

 Titanic continues to maintain that § 365(b)(1)(B) provides an independent basis for damages beyond those which are authorized by the lease. In support of its position, Titanic cites two cases in which the courts have awarded attorney's fees as part of a cure or in compensation for actual pecuniary loss under § 365(b)(1). They are *In re Westworld Community Healthcare, Inc.*, 95 B.R. 730 (Bankr.C.D.Cal.1989); *In re Foreign Crating, Inc.*, 55 B.R. 53 (Bankr.E.D.N.Y.1985). In addition, Titanic cites *In re Hillsborough Holdings Corp.*, 126 B.R. 895 (Bankr.M.D.Fla.1991) for the proposition that it is entitled to interest as an element of pecuniary loss.

With respect to attorney's fees, *In re Westworld Community Healthcare, Inc.*, *supra*, is the only published case that the Court has found expressly holding that § 365(b)(1) provides a right of recovery without regard to the terms of the lease. In every other case in which attorney's fees have been awarded, the fees have been authorized by the lease agreement. *See In re Hillsborough Holdings Corp.*, 126 B.R. 895 (Bankr.M.D.Fla.1991); *In re Joshua Slocum, Ltd.*, 103 B.R. 601 (Bankr. E.D.Pa.1989); *In re Diamond Head Emporium, Inc.*, 69 B.R. 487 (Bankr.D.Haw. 1987); *In re Westview 74th Street Drug Corp.*, 59 B.R. 747 (Bankr.S.D.N.Y.1986); *In re J.W. Mays, Inc.*, 30 B.R. 769 (Bankr. S.D.N.Y.1983); *In re Bullock*, 17 B.R. 438 (9th Cir.B.A.P.1982).

The F & N/Titanic lease specifically requires that each party bear its own attorneys' fees in "enforcing the covenants and agreements of this Lease." Certainly under these circumstances there is no reason for the Court to depart from the majority view by awarding attorney's fees as an element of pecuniary loss under § 365(b)(1)(B). This conclusion is buttressed by the Ninth Circuit's strong adherence to the American rule, as expressed recently in *Layman v. Combs*, 981 F.2d 1093 (9th Cir.1992).

 In addition to attorneys' fees, Titanic requests interest on monetary defaults, citing *In re Hillsborough Holdings Corp.*, *supra*. While the *Hillsborough Holdings* court did not authorize attorneys' fees, it allowed interest at the legal rate provided by state law, stating simply that interest is "an actual pecuniary loss flowing directly from the admitted default of the Debtor." Likewise in *In re Mays, Inc.*, *supra*, the court declined to award attorneys' fees, but it allowed interest because state law required tenants to pay interest on rental installments from the time they are due.

The lease under consideration does not provide for interest on monetary defaults. Article XXIX provides that "[n]o action shall be maintained against Tenant by Landlord ... on account of this Lease except (i) for the recovery of the *specific sums required to be paid by Tenant by the express terms of this Lease ...*" (emphasis added). The Court is not aware of any provision of state law that requires interest to be paid on past-due rent. To the extent that prejudgment interest is generally authorized as an element of damage on a liquidated claim, it appears to be precluded by the language of the lease.

 Finally, Titanic has asked the Court to reconsider its ruling and hold that § 365(b)(1)(B) provides an independent basis for damages flowing from the breach of the operating covenant. The case law does not support such a view. Rather, the law is generally to the effect that "an obligee is entitled to any elements of damages, pursuant to § 365(b)(1), that it is able to prove, that is authorized by the parties' agreement (here, the lease), and that is reasonable." *In re Joshua Slocum, Ltd.*, 103 B.R. at 605.

### CONCLUSION

For the reasons set forth above, Titanic's motion for reconsideration should be denied.