**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

In Re: SHANGRA-LA, INCORPORATED,
<u>Debtor.</u>

THREE SISTERS PARTNERS, L.L.C.,
<u>Creditor-Appellant,</u>

v.

HOLMES P. HARDEN, Trustee-in-
bankruptcy,
<u>Appellee,</u>

and

MARJORIE K. LYNCH,
<u>Bankruptcy Administrator-Appellee.</u>

No. 98-1497

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
W. Earl Britt, Senior District Judge.
(CA-98-56-5-BR, 96-01939-5-ATS)

Argued: October 28, 1998

Decided: January 19, 1999

Before MURNAGHAN and WILLIAMS, Circuit Judges, and
BLAKE, United States District Judge for the District of Maryland,
sitting by designation.

_____

Reversed and remanded by published opinion. Judge Williams wrote
the opinion, in which Judge Murnaghan and Judge Blake joined.

_____

**COUNSEL**

**ARGUED:** Peter Joseph Sarda, WALLACE, CREECH & SARDA, L.L.P., Raleigh, North Carolina, for Appellant. William Peak Janvier, MERRITT, WOOTEN & JANVIER, P.A., Raleigh, North Carolina, for Appellee Harden; John Gregory Rhyne, Staff Attorney, BANK-RUPTCY ADMINISTRATOR'S OFFICE FOR THE EASTERN DISTRICT OF NORTH CAROLINA, Wilson, North Carolina, for Appellee Lynch.

_____

**OPINION**

WILLIAMS, Circuit Judge:

Three Sisters Partners, L.L.C. (Three Sisters) appeals the district court's affirmance of the bankruptcy court's order denying in toto its request for postpetition attorneys' fees arising from Three Sisters's involvement in its commercial tenant's bankruptcy case. For the reasons stated herein, we reverse and remand for further proceedings consistent with this opinion.

I.

Three Sisters entered into a long-term commercial lease with Shangra-La, Inc. (Shangra-La) on June 14, 1995. The lease concerned a warehouse located at 427 Dawson Street in downtown Raleigh, North Carolina, in which Shangra-La intended to operate a night club. The lease had an initial term of five years and granted Shangra-La three options to renew the lease for additional five-year periods. Shangra-La also was granted the option to purchase the property within the first forty-eight months of the lease for $700,000.

Paragraph 21 of the lease agreement governed "Default." Default under the lease was triggered by certain occurrences including: "[t]he failure of [lessee] to pay when due any rent or any other sum for which the [lessee] becomes liable or obligated to pay under the [l]ease;" and "[t]he failure of[lessee] to perform timely any acts required of it in the performance of the [l]ease or otherwise to comply

2

with any term or provision [t]hereof." (J.A. at 19.) Upon default the lease further provided:

> 22.4 In the event the LESSOR shall employ an attorney to collect any sum due under the Lease or enforce any obligation of the LESSEE hereunder, the LESSEE shall be liable for reasonable attorneys' fees in the amount of fifteen percent (15%) or the maximum percentage allowed thereunder of the outstanding balance due under the Lease pursuant to N.C.G.S. § 6-21.2 now in effect or as amended. The outstanding balance due under the Lease shall be any rent owed to the LESSOR along with any other sum or sums which become due to the LESSOR under any provision of the Lease.

(J.A. at 20-21.)

Unfortunately, during the spring and summer of 1996, Shangra-La experienced some financial difficulties and was not able to meet its obligations under the lease. Contractors who had performed interior improvements in the warehouse filed mechanics' liens on the property. Three Sisters considered these liens to be defaults under the lease agreement and began to pursue the state law remedy of summary ejectment in September 1996; however, Three Sisters continued to negotiate a settlement with Shangra-La that would have enabled Shangra-La to maintain its leasehold interest in the property. By October 1996, however, negotiations were drawing to a close. Shangra-La did not pay the October rent when due. As a result, Three Sisters sent a letter stating that it was terminating the lease, requesting that Shangra-La voluntarily relinquish the property, and demanding reimbursement for attorneys' fees in the amount of $2,223.

Shangra-La did not voluntarily surrender the premises, and Three Sisters pursued its ejectment action in the Wake County district court. The magistrate ordered Shangra-La's eviction. Shangra-La appealed that state court ruling. Shortly thereafter, on November 13, 1996 and before the state appeal could be heard, Shangra-La filed a voluntary petition for Chapter 11 protection in the United States Bankruptcy Court for the Eastern District of North Carolina.

3

As the Shangra-La matter progressed through the bankruptcy court, Three Sisters actively participated in the case. On November 22, 1996, Three Sisters filed its first motion for relief from the automatic stay imposed by 11 U.S.C.A. § 362(a) (West Supp. 1998) on the ground that Shangra-La's interest in the property terminated by operation of state law prior to the filing of the bankruptcy petition. See 11 U.S.C.A. § 365(c)(3) (West Supp. 1998) (providing that the Trustee may not assume a lease of nonresidential real property when the lease has been terminated under applicable nonbankruptcy law prior to the order for relief). The bankruptcy court denied that motion.

On January 9, 1997, the Trustee in bankruptcy gave notice that he intended to assume the Three Sisters lease under the terms of § 365 of the Bankruptcy Code. 11 U.S.C.A. § 365 (West Supp. 1998). Three Sisters objected to the assumption of the lease on January 22, 1997. Before ruling on the objection, the bankruptcy court held the assumption proceedings in abeyance pending plan confirmation. Three plans of reorganization were proposed: one by each of two competing subgroups of Shangra-La shareholders and one by Three Sisters. Three Sisters also filed objections to each of the shareholder plans.

The bankruptcy court confirmed one of the two shareholder plans by an order dated May 13, 1997. The confirmed plan called for the assumption of the Three Sisters lease and included provisions to cure any remaining defaults under the lease. The plan also provided that Three Sisters would be provided with adequate assurances of future performance. The confirmed plan was never effectuated, however, because the plan proponent was not able to obtain adequate capital to pay necessary start-up costs.

As a result, upon motion from Shangra-La's Trustee, the bankruptcy court converted the case from a Chapter 11 reorganization to a Chapter 7 liquidation. After the conversion, the Trustee moved for an extension of time in which to make a decision to assume or assign the Three Sisters lease under § 365(d)(3) of the Bankruptcy Code. Three Sisters objected to the motion to extend time, and once again moved for relief from the automatic stay. As its ground for relief from the automatic stay, Three Sisters reiterated its earlier position that the Trustee could not assume or assign the leasehold interest because the lease had been terminated prior to Shangra-La's Chapter 11 filing.

4

See 11 U.S.C.A. § 365(c)(3). The bankruptcy court granted the Trustee's motion to extend time to assume or assign the lease and denied Three Sisters's motion for relief from the automatic stay. On September 5, 1997, the bankruptcy court issued an order granting the Trustee's request to assume the lease.

Next, Three Sisters's attorneys applied for reimbursement of attorneys' fees and expenses incurred related to the Shangra-La lease, a total of $42,733.09. The application stated no legal theory for the recovery of the fees and expenses. The trustee objected to the fee request. After a hearing on the attorneys' fee question, the bankruptcy court determined that Three Sisters's attorneys were entitled to $5,416. Specifically, the bankruptcy court determined that under 11 U.S.C.A. § 365(b)(1)(B), the attorneys were entitled to fees related to the default of the lease. Thus, the bankruptcy court concluded that the Three Sisters's attorneys were entitled to recover for collection efforts related to all prepetition defaults, including the letter-writing and negotiations related to the mechanics' liens and the work in state court pursuing ejectment. The bankruptcy court determined, however, that the actions taken by Three Sisters during the bankruptcy case were not recoverable under 11 U.S.C.A. § 365(b)(1)(B) because Three Sisters had litigated issues particular to bankruptcy law. Additionally, the district court determined that the attorneys' expenses and fees were not administrative expenses recoverable under 11 U.S.C.A. § 503, because Three Sisters had not made a substantial contribution to the bankruptcy case. Three Sisters later filed a motion for rehearing in the bankruptcy court that was denied.

Three Sisters appealed to the district court. The district court affirmed the ruling of the bankruptcy court without opinion. Three Sisters filed a timely notice of appeal.

II.

Before us, Three Sisters attacks the bankruptcy court's order denying it the $37,317.09 of postpetition fees and expenses incurred during the progress of Shangra-La's bankruptcy[1] on the ground that the

_____

[1] Although Three Sisters is appealing the district court's affirmance of the bankruptcy court's order, because the district court's order was a summary affirmance, we refer to the bankruptcy court order for convenience.

5

fees are recoverable under § 365 of the Bankruptcy Code.[2]

We review the judgment of a district court sitting in review of a bankruptcy court de novo, applying the same standards of review that were applied in the district court. See Cook Group v. C.R. Bard, Inc., 149 F.3d 249, 251-52 (4th Cir. 1998).

A.

Section 365 of the Bankruptcy Code governs "Executory Contracts and Unexpired Leases," and provides:

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee --
>
> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default;
>
> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C.A. § 365(b)(1) (West 1993 & Supp. 1998). Three Sisters claims its right to postpetition attorneys' fees under § 365(b)(1)(B), which provides for compensation for the landlord's actual pecuniary losses resulting from default under the lease.

_____

[2] Three Sisters also claims that the fees and expenses are recoverable under § 503 of the Bankruptcy Code as an administrative expense. Because Three Sisters cannot point to a tangible benefit to Shangra-La's estate, we summarily reject the argument as without merit. See In re DP Partners, Ltd., 106 F.3d 667, 673 (5th Cir.), cert. denied, 118 S. Ct. 63 (1997).

In its analysis of Three Sisters's claim to post-petition attorneys' fees under § 365(b)(1)(B), the bankruptcy court appeared to adopt a bright-line test drawn from the Ninth Circuit's opinion in In re Fobian, 951 F.2d 1149 (9th Cir. 1991). In Fobian, the Ninth Circuit noted that state law often controls the question of whether a creditor may be entitled to attorneys' fees relating to a particular debtor's bankruptcy case. Id. at 1153. The Ninth Circuit nevertheless determined that where litigated issues "involve not basic contract enforcement questions, but issues peculiar to federal bankruptcy law, attorney's fees will not be awarded absent bad faith or harassment by the losing party." Id.

Applying this rule to Three Sisters's case, the bankruptcy court determined that Three Sisters was not entitled to attorneys' fees for its participation in Shangra-La's bankruptcy. Specifically, the bankruptcy court held that Three Sisters's participation in the plan confirmation process "involved strictly bankruptcy issues," In re Shangra-La, Inc., 213 B.R. 303, 305 (Bankr. E.D.N.C. 1997), and therefore attorneys' fees were not available under the Fobian formulation. Additionally, while recognizing that "Three Sisters' motions for relief from the automatic stay present a closer question," the court reasoned that because the motion for relief was "primarily one to dissolve an injunction created by the Bankruptcy Code," the attorneys' fees incurred in that endeavor did not constitute pecuniary loss under § 365(b)(1)(B) and were not recoverable. Id. at 305-06. This formulation inappropriately focuses on the presence of issues peculiar to bankruptcy law, rather than on whether the attorney's actions were reasonably undertaken in furtherance of purposes for which attorneys' fees are properly recoverable under the terms of the lease and applicable state law.

While useful for its bright-line distinction, the state law/bankruptcy law dichotomy relied upon by the bankruptcy court cannot serve to solve the puzzle of a landlord's right to post-petition attorneys' fees under § 365(b)(1)(B) of the Bankruptcy Code. Section 365(b)(1)(B) requires that the Trustee compensate the landlord for any actual pecuniary loss resulting from a default under an unexpired lease, before assuming the lease. See 11 U.S.C.A. § 365(b)(1)(B). This mandate exists in order to strike a balance between landlord and tenant. The tenant who has defaulted under the terms of the lease can continue to

7

possess property under favorable terms negotiated in better financial times, but in order to do so, the tenant must make the landlord whole for his losses and give him the benefit of his bargain -- a bargain that the landlord has negotiated under state law. Thus, bankruptcy law, by ordering that default be cured under § 365(b)(1)(A) and that pecuniary losses be paid under § 365(b)(1)(B), sends us back to state contract law for a determination of the terms of default and the landlord's rights upon default under the lease.**3** Cf. In re Lavigne, 114 F.3d 379, 387 (2d. Cir. 1997) (applying state law to determine damages for breach of contract upon Trustee's rejection of lease under § 365); In re Rega Properties, Ltd., 894 F.2d 1136, 1139 (9th Cir. 1990) (noting that in the absence of contrary guidance, state damages law was to be applied under § 365 unless doing so conflicted with bankruptcy policy).

With this understanding of the applicable law, it is clear that there are three keys to settling Three Sisters's right to postpetition attorneys' fees: the language of § 365(b)(1)(B); relevant North Carolina law regarding recovery of attorneys' fees; and the terms of the Three-Sisters/Shangra-La lease.

B.

1.

Section 365 of the Bankruptcy Code, 11 U.S.C.A.§ 365 (West 1993 & Supp. 1998), grants the trustee in bankruptcy the right to assume or reject executory contracts and unexpired leases. See 3 Collier on Bankruptcy ¶ 365.01 (Lawrence P. King, ed., 15th ed. 1998). "[T]he authority to reject an executory contract is vital to the

_____

**3** The Bankruptcy Code also eliminates some of the more onerous anti-debtor provisions that can be negotiated at arms length under state law. For example, the Code eliminates "ipso facto" clauses under which a bankrupt tenant may find his lease automatically terminated because he has sought bankruptcy protection. See 11 U.S.C.A. § 365(e)(1) (West 1993). Recent amendments also provide that the landlord may not charge the debtor the default rate of interest under the contract or lease when the default with which the debtor is charged is nonmonetary in nature. See 11 U.S.C.A. § 365(b)(2)(D) (West Supp. 1998).

basic purpose of a Chapter 11 reorganization, because rejection can release the debtor's estate from burdensome obligations that can impede a successful reorganization." NLRB v. Bildisco & Bildisco, 465 U.S. 513, 528 (1984). Likewise, the power to assume and/or assign the lease gives the trustee significant flexibility in managing the estate. A leasehold interest often proves to be the most valuable asset in a small business bankruptcy. When the debtor assumes its unexpired lease, however, it assumes it cum onere -- the debtor must accept obligations of the executory contract along with the benefits. See Adventure Resources, Inc. v. Holland, 137 F.3d 786, 798 (4th Cir.), cert. denied, 117 S. Ct. 404 (1998).

Because the Bankruptcy Code also recognizes the interest of the landlord in realizing the benefit of the bargain struck with the tenant, albeit under brighter financial circumstances, in order to assume the lease, the trustee must cure any remaining defaults under the contract or lease. See id.; 11 U.S.C.A. § 365(b)(1)(A) ("If there has been a default . . . the trustee may not assume such contract or lease unless . . . the trustee . . . cures, or provides adequate assurance that the trustee will promptly cure, such default."). Further, prior to assumption of the lease, the trustee must "compensate[ ], or provide[ ] adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default." 11 U.S.C.A. § 365(b)(1)(B) (emphasis added). Attorneys' fees incurred in attempting to collect sums due from debtors following default may be recovered as pecuniary loss under § 365(b)(1)(B) if such monies were expended as the result of a default under the contract or lease between the parties and are recoverable under the contract and applicable state law. See, e.g., In re F & N Acquisition Corp., 152 B.R. 304, 308 (Bankr. W.D. Wash. 1993); In re Hillsborough Holdings Corp., 126 B.R. 895, 898 (Bankr. M.D. Fla. 1991).

Entitlement to attorneys' fees, however, is dependent on the terms of the lease and on state law; § 365(b)(1)(B) does not create an independent right to an award of attorneys' fees. See, e.g., In re Ryan's Subs, Inc., 165 B.R. 465, 467 (Bankr. W.D. Mo. 1994); In re Child World, Inc., 161 B.R. 349, 353 (Bankr. S.D.N.Y. 1993); In re F & N Acquisition Corp., 152 B.R. at 308; In re Hillsborough Holdings Corp., 126 B.R. at 898; In re Joshua Slocum, Ltd., 103 B.R. 601, 607-

9

08 (Bankr. E.D. Penn. 1989); In re Westview 74th Street Drug Corp., 59 B.R. 747, 756-57 (Bankr. S.D.N.Y. 1986); In re Tech Hifi, Inc., 49 B.R. 876, 881 (Bankr. D. Mass. 1985).**4**

2.

North Carolina law governs the Three Sisters/Shangra-La lease,**5** and therefore we must look to North Carolina law to evaluate Three Sisters's argument that it is entitled to postpetition attorneys' fees under state law and, accordingly, also under § 365(b)(1)(B). "`The jurisprudence of North Carolina traditionally has frowned upon contractual obligations for attorney's fees as part of the costs of an action.'" Stillwell Enters., Inc. v. Interstate Equip. Co., 266 S.E.2d 812, 814 (N.C. 1980) (quoting Supply, Inc. v. Allen, 227 S.E.2d 120, 123 (N.C. App. 1976)) (alteration omitted). "Thus the general rule [in North Carolina is] that a successful litigant may not recover attorneys' fees, whether as costs or as an item of damages, unless such a recovery is expressly authorized by statute." Id. "Even in the face of a carefully drafted contractual provision" authorizing payment of attorneys' fees, the North Carolina courts "have consistently refused to sustain such an award absent statutory authority therefor." Id. at 814-15.

Section 6-21.2 of the North Carolina General Statutes provides the statutory authority for recovering attorneys' fees when permitted in a lease. See R.C. Assocs. v. Regency Ventures, Inc., 432 S.E.2d 394, 397 (N.C. App. 1993) (noting that leases are "other evidence of indebtedness" under N.C. Gen. Stat. § 6-21.2). The statute caps an award of attorneys' fees at fifteen percent of the outstanding balance owing on the instrument of indebtedness, see N.C. Gen. Stat. § 6-

_____

**4** Three Sisters cites one case that holds that § 365(b)(1)(B) creates an independent right to recover attorneys' fees without regard to the terms of the lease and state law requirements, In re Westworld Community Healthcare, Inc., 95 B.R. 730 (Bankr. C.D. Cal. 1989). Not only is that case's holding against the great weight of authority, we find its reasoning to be unpersuasive. Further, the holding was rejected in Lacy v. Westside Print Works, Inc., 180 B.R. 557, 564 (B.A.P. 9th Cir. 1995).
**5** The lease provided: "29.6 Governing Law. This agreement shall be construed in accordance with and governed and enforced under the laws of the State of North Carolina." (J.A. at 25.)

10

21.2(1) & (2), and further requires that parties wishing to enforce the provisions of their attorneys' fee agreements give adequate notice, see N.C. Gen. Stat. § 6-21.2(5).

In sum, for Three Sisters to recover its postpetition attorneys' fees through the operation of § 365(b)(1)(B) of the Bankruptcy Code, which incorporates North Carolina law, the lease between Three Sisters and Shangra-La must have a clear contractual provision allocating to Three Sisters the right to collect attorneys' fees, that provision must be lawful under an express grant of North Carolina statutory authority, and Three Sisters must meet the requirements of the statute to collect its fees.

3.

Applying this analysis to Three Sisters's claim that it was improperly denied postpetition attorneys' fees, we conclude that remand to the bankruptcy court for further consideration of factual matters is necessary. As to preliminary matters, the lease contains a clear attorneys' fees provision in paragraph 22.4 of the lease, and, as we just discussed, such fees are recoverable under North Carolina law. Further, the Bankruptcy Code recognizes that a landlord must be compensated for actual pecuniary losses resulting from defaults that occurred under the lease during the course of the debtor's insolvency. See 11 U.S.C.A. § 365(b)(1)(B). Attorneys' fees qualify as actual pecuniary losses when state law would recognize them as such. See, e.g., In re Ryan's Subs, Inc., 165 B.R. 465, 467 (Bankr. W.D. Mo. 1994).

The lease in this case permits recovery of fees where the lessor employs an attorney "to collect any sums due under the lease or enforce any obligation of LESSEE hereunder." Accordingly, the focus of the bankruptcy court on remand as to any disputed item of fees should be on whether the attorney's action was taken primarily to collect sums due under the lease or to enforce an obligation of the lessee. If so, and if the requested fee is otherwise reasonable, the fact that issues peculiar to federal bankruptcy law were involved will not preclude an award of fees. Accordingly, the focus of the bankruptcy court on remand as to any disputed item of fees should be on whether the attorney's action was taken primarily to collect sums due under

11

the lease or to enforce an obligation of the lessee and whether state law would allow recovery for such actions.

From our standpoint, reviewing the limited record before us, it is hard to decipher what defaults occurred under the lease and what steps Three Sisters took to cure those defaults. It is also difficult for us to determine whether Three Sisters's postpetition involvement in Shangra-La's bankruptcy proceeding had any relationship to defaults under the lease or were undertaken for another purpose. It is equally troublesome for us to determine whether the fees sought by Three Sisters's attorneys are reasonable. Interpreting the contract and the course of events pre- and postpetition raises myriad factual issues that the lower court must resolve in the first instance.

4.

The Trustee and the Bankruptcy Administrator for the Eastern District of North Carolina argue, however, that there is no need for us to remand this matter, because a recovery of attorneys' fees is foreclosed by operation of North Carolina law. They argue that attorneys' fees are recoverable under N.C. Gen. Stat. § 6-21.2(5) only if the party seeking the fees gives notice, and the Trustee and Bankruptcy Administrator assert that notice by means of a claim in the bankruptcy case is inadequate to meet the requirements of the statute.

The record before us does not indicate that Three Sisters has given notice adequate to satisfy the requirements of N.C. Gen. Stat. § 6-21.2(5).**6** See ITT-Industrial Credit Co. v. Hughes, 594 F.2d 384, 387-

---

**6** N.C. Gen. Stat. § 6-21.2(5) specifies that the individual seeking to enforce the attorneys' fees provision:

> shall, after maturity of the obligation by default or otherwise, notify the maker, debtor, account debtor, endorser or party sought to be held on said obligation that the provisions relative to payment of attorneys' fees in addition to the "outstanding balance" shall be enforced and that such maker, debtor, account debtor, endorser or party sought to be held on said obligation has five days from the mailing of such notice to pay the "outstanding balance" without the attorneys' fees. If such party shall pay the "outstanding balance" in full before the expiration of such time, then the obligation to pay the attorneys' fees shall be void, and no court shall enforce such provisions.

12

88 (4th Cir. 1979) (stating that under North Carolina law a claim in bankruptcy is insufficient to meet notice requirements of § 6-21.2(5)). North Carolina, although it strictly construes the notice requirement of the statute, see Blanton v. Sisk, 318 S.E.2d 560, 564 (N.C. App. 1984), does not, however, place a time limit on filing the requisite notice, see Gillespie v. DeWitt, 280 S.E.2d 736, 747 (N.C. App. 1981); First Citizens Bank & Trust Co. v. Larson , 206 S.E.2d 775, 780 (N.C. App. 1974). Under the language of the statute, notice need be given, "after maturity of the obligation by default or otherwise." N.C. Gen. Stat. § 6-21.2(5). As a result, the North Carolina courts have held that it is not necessary to give notice prior to instituting a suit to enforce an attorneys' fees provision, but instead notice may be given during the course of the proceedings. See Binning's, Inc. v. Roberts Constr. Co., 177 S.E.2d 1, 3 (N.C. App. 1970). Of course, actual notice is required before the obligation to pay attorneys' fees matures. See Northwestern Bank v. Barber, 339 S.E.2d 452, 455 (N.C. App. 1986).

Although these cases are somewhat inconsistent and difficult to reconcile, the North Carolina Court of Appeals emphasized in the Binning's case that notice under the statute was adequate when that notice was given promptly after the debtor made a motion to dismiss the claim for attorneys' fees for failure to provide the requisite notice. See Binning's, Inc., 177 S.E.2d at 3. From our review of the record in this matter, it appears that the notice issue did not arise during the litigation below, but is first raised on appeal. Thus, we conclude that it is not yet too late for Three Sisters to give notice that it is seeking attorneys' fees for postpetition involvement in Shangra-La's bankruptcy case. It may do so through an appropriate motion for relief from the § 362 automatic stay,**7** requesting that the court modify the

_____

**7** Three Sisters argued persuasively at oral argument that it was faced with a Hobson's choice under the notice provisions of the North Carolina statute. Three Sisters claimed that if it gave notice as required under the statute, it would face penalties for violating the automatic stay imposed by § 362(a)(1), see 11 U.S.C.A. § 362(h) (providing that the debtor may collect damages for violations of the automatic stay), and, yet, the failure to give notice could result in a forfeiture of $40,000 in attorneys' fees. We think the resolution to this dilemma is clear: a motion for relief from the automatic stay under § 362(d)(1). See  11 U.S.C.A. § 362(d)(1) (pro-

13

stay for the purpose of giving the statutory notice, if such stay is still in place, upon remand.**8**

III.

In conclusion, the bankruptcy court erred to the extent that it applied a bright-line test precluding the award of fees for actions primarily involving issues of bankruptcy law, without analyzing the terms of the lease between the parties and the effect of state law. Recognizing that the bankruptcy court, with its superior knowledge of the facts, may reach an identical conclusion as to the particular items of attorneys' fees that should be recovered, we nevertheless believe a

_____

viding that a party in interest may make a motion for relief from the automatic stay and the court may grant relief for cause). Upon such a motion, the bankruptcy court has an opportunity to evaluate the equities of the situation and the interplay between bankruptcy requirements and state law and can tailor relief accordingly.

**8** Three Sisters argues that the reasoning of Unsecured Creditors' Comm. v. Heller & Co., 768 F.2d 580, 581 (4th Cir. 1985), applies in this case to preempt the notice requirements of N.C. Gen. Stat. § 6-21.2(5). We disagree. Heller & Co. addressed § 506(b) of the Bankruptcy Code, which states, "[T]here shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose." 11 U.S.C.A. § 506(b) (West 1993). We held that when Congress enacted the Bankruptcy Reform Act in 1978, it created an independent right to attorneys' fees under § 506(b). In Heller & Co., we reasoned that the language of § 506(b) in conjunction with its legislative history, indicated clear congressional intent to displace state law to the extent that it might be contrary to the written agreement specifically referenced in the Bankruptcy Code. Thus, we determined that in North Carolina, the requirements of § 6-21.2 were preempted and the security agreement controlled the award of attorneys' fees. Heller & Co., 768 F.2d at 585. In contrast, § 365 does not contain language indicating the primacy of the agreement, and rather refers only to "pecuniary losses." Thus, we conclude that § 365 has not preempted the need to apply state law to determine an award of attorneys' fees.

14

remand is required to permit examination of this question under the appropriate standard as enunciated in this opinion.

REVERSED AND REMANDED

15