In re MID AMERICAN
OIL, INC., Debtor.

No. 299–05601.

United States Bankruptcy Court,
M.D. Tennessee.

June 14, 2000.

Michael R. Pasaly, Waller, Lansden, Dorth & Davis, Nashville, TN, for the debtor.

Keith J. Shapiro, Greenberg Trauig, P.A., Chicago, Illinois, Lawrence R. Ahearn, III, Gullett, Sandford, Robinson & Martin, PLLC, Nashville, TN, for McDonald's Corporation.

## MEMORANDUM & ORDER

### GEORGE C. PAINE, II, Chief Judge.

This matter is before the court on McDonald's Corporation's request for payment of attorney fees in connection with the debtor's attempt to assume a lease at one of its retail convenient store locations. McDonald's contends that the terms of the lease require the debtor to pay attorney fees incurred to enforce the provisions of the lease. The debtor argues that no defaults existed under the lease, and no attorney fees are due. For the reasons more fully described herein, the court denies McDonald's request for attorney fees.

The debtor is engaged in the wholesale and retail sales and distribution of petroleum products including fuels, oils, lubricants and filters in Middle and East Tennessee. The debtor operates convenience stores at a number of locations, including one generally identified as Front Runner Market # 1116 located in Cookeville, Tennessee. McDonald's is the lessor under a Ground Lease and Operating Agreement dated March 15, 1997 to and with Cookeville Energy, Inc. Mid American Oil, Inc. ("Debtor") acquired the stock of Cookeville Energy, Inc. around December 1997, and is the lessee under the Ground Lease.

On July 2, 1999, the debtor filed its chapter 11 bankruptcy petition. Within the context of bankruptcy, the debtor filed a motion to assume the McDonald's' Ground Lease. McDonald's objected to the motion to assume because the 1998 property taxes were outstanding. The objection to the motion to assume the lease was eventually resolved and an order was entered on March 7, 2000 that allowed the debtor to assume the lease. However, all issues as to the payment of attorney fees were reserved for future hearing.

Section 32, paragraph F sets out the parties rights with respect to the payment of legal fees:

> **LEGAL FEES:** In the event that at any time during the term of this Agreement either Company or McDonald's shall institute any action or proceeding against the other relating to the provisions of its Agreement, or any default under this Agreement, then, and in that event, the unsuccessful party in such action or proceeding agrees to reimburse the successful party for the reasonable expense of attorney's fees and disbursements incurred therein by the successful party.

Under this provision, McDonald's argues that it is entitled to the payment of attorney fees because it hired outside counsel to enforce its rights under the Ground Lease. McDonald's presented two witnesses, Frank Kudia, in house legal counsel, and Carol Wingles, in house accountant, to support its contention that it acted reasonably. Mr. Kudia explained that McDonald's had to ensure that the debtor was current on its rent, that the debtor had insurance coverage in effect with McDonald's named as a loss payee, and that the debtor had reimbursed McDonald's for taxes paid as required by the lease. Further, outside counsel was necessary to negotiate additional protections cash collateral order. The debtor contends that while the hours may have been expended by McDonald's counsel, the debtor has no liability for attorney fees under the lease.

■ First, as a matter of law, the court finds that the contract's attorney fee provision does not permit McDonald's to recover attorney fees from the debtor. Attorneys' fees incurred in attempting to collect sums due from debtors following default may be recovered as pecuniary loss under § 365(b)(1)(B) if such monies were expended as the result of a default under the contract or lease between the parties and are recoverable under the contract and applicable state law. *See, e.g., In re F &*

*N Acquisition Corp.*, 152 B.R. 304, 308 (Bankr.W.D.Wash.1993); *In re Hillsborough Holdings Corp.*, 126 B.R. 895, 898 (Bankr.M.D.Fla.1991).

■ Entitlement to attorneys' fees, however, is dependent on the terms of the lease and on state law; § 365(b)(1)(B) does not create an independent right to an award of attorneys' fees. *See, e.g., In re Ryan's Subs, Inc.*, 165 B.R. 465, 467 (Bankr.W.D.Mo.1994); *In re Child World, Inc.*, 161 B.R. 349, 353 (Bankr.S.D.N.Y. 1993); *In re F & N Acquisition Corp.*, 152 B.R. at 308; *In re Hillsborough Holdings Corp.*, 126 B.R. at 898; *In re Joshua Slocum, Ltd.*, 103 B.R. 601, 607–08 (Bankr. E.D.Pa.1989); *In re Westview 74th Street Drug Corp.*, 59 B.R. 747, 756–57 (Bankr. S.D.N.Y.1986); *In re Tech Hifi, Inc.*, 49 B.R. 876, 881 (Bankr.D.Mass.1985).[1] While McDonald's cited some case law allowing landlords to recover attorney fees in connection with enforcement of the covenants of the leases at issue, the leases in those cases specifically provided for such

recovery. In this case, the lease allows recovery of attorney fees only in certain, specific instances.

■ The cardinal rule for interpretation of contracts is to ascertain the intention of the parties from the contract as a whole and to give effect to that intention consistent with legal principles. *Winfree v. Educators Credit Union*, 900 S.W.2d 285, 289 (Tenn.Ct.App.1995); *Rainey v. Stansell*, 836 S.W.2d 117, 118 (Tenn.Ct. App.1992). The court, in arriving at the intention of the parties to a contract, does not attempt to ascertain the parties' state of mind at the time the contract was executed, but rather their intentions as actually embodied and expressed in the contract as written. *Id.* In construing contracts, the words expressing the parties' intention should be given their usual, natural, and ordinary meaning. *Taylor v. White Stores, Inc.*, 707 S.W.2d 514, 516 (Tenn.Ct. App.1985). In the absence of fraud or mistake, a contract must be interpreted and enforced as written, even though it

1. McDonald's cites *In re BAB Enterprises, Inc.*, 100 B.R. 982 (Bankr.W.D.Tenn.1989) for the proposition that section 365(b)(1)(B) does provide a lessor with an independent right to recover attorney fees. In that case, the debtor, as part of its motion to assume the lease, agreed to pay the landlord $1,000 in attorney fees. The court relied on *In re Westworld Community Healthcare, Inc.*, 95 B.R. 730 (Bankr.C.D.Cal.1989) finding § 365(b)(1)(B) did permit the debtor to pay $1,000 to the lessor as long as such amount was reasonable. The majority of courts have rejected the *Westworld Community* decision and held that, "section 365 does not, and was not intended to, give creditors greater rights than they would have had under the contract or lease which gave rise to the debt." *In re Ryan's Subs, Inc.*, 165 B.R. 465, 468 (Bankr.W.D.Mo. 1994); *see also In re Child World, Inc.*, 161 B.R. 349, 353–54 (Bankr.S.D.N.Y.1993); *In re Hillsborough Holdings Corp.*, 126 B.R. 895, 898 (Bankr.M.D.Fla.1991) (rejecting *In re Westworld*); *In re Joshua Slocum, Ltd.*, 103 B.R. 601, 607–08 (Bankr.E.D.Pa.1989) (rejecting *In re Westworld Community Healthcare, Inc.* and holding subsection (B) does not create an independent right to attorney's fees). These cases rely on the "American Rule," that unless otherwise specified in a contract or statute, parties to litigation must

bear their own attorney's fees. *See Johnson v. Righetti (In re Johnson)*, 756 F.2d 738, 741 (9th Cir.1985) *cert. denied*, 474 U.S. 828, 106 S.Ct. 88, 88 L.Ed.2d 72 (1985) (applying American rule to § 362). Further, Congress specifically grants the right to attorney's fees in other provisions of the Code. *See* 11 U.S.C. § 363(h) (allowing recovery of "actual damages, including costs and attorney's fees"); and 11 U.S.C. § 506(b) (allowing fees provided for under a security agreement). Because Congress has specifically provided for fees in some circumstances but not in others, the courts should not imply attorney's fees where they are not specifically provided for by contract or statute.

The Ninth Circuit Bankruptcy Appellate Panel has also rejected *In re Westworld* upon which the *BAB Enterprises* decision relied, holding that § 365(b)(1)(B) does not create an independent right to attorney fees, and that not only was *Westworld* wrongly decided, but that the "American Rule" prohibits an independent award of attorney fees under subsection (B). *In re Westside Print Works, Inc.*, 180 B.R. 557 (9th Cir. BAP 1995).

Accordingly, this court agrees with the majority of courts considering the issue, that section 365(b)(1)(B) does not provide an independent basis for recovery of attorney fees.

contains terms which may seem harsh or unjust. *Heyer–Jordan & Assocs. v. Jordan,* 801 S.W.2d 814, 821 (Tenn.Ct.App. 1990).

Paragraph F of Section 32 contains at least four requirements before attorney fees are recoverable: (1) an action or proceeding; (2) pertaining to the provisions of the lease or a default under the lease; (3) recoverable only by the successful party; and (4) that the expenses sought are reasonable. In this case, the action or proceeding was arguably the bankruptcy filing or the motion to assume the Ground Lease.[2] However, there was no dispute "relating to the provisions" of the lease. The court found no default under the lease, but if there was a default, McDonald's was not the "successful party" in that the lease was ultimately assumed by the debtor. Finally, the lease required that the expenses sought be reasonable. Even if the expenses were reasonable, all elements must be present to recover, and the court finds that McDonald's failed to show its entitlement to attorney fees in accordance with the lease.

Even if the court could not decide this strictly as a legal issue of contractual interpretation, the facts nonetheless demonstrate that no basis exists for an award of attorney fees under the terms of this lease. McDonald's had three major areas of concern, according to Frank Kudia: (1) timely payment of rent; (2) maintenance of insurance coverage with McDonald's named as a loss payee; and (3) reimbursement for taxes paid by McDonald's on behalf of the lessee.

## A. Rent

The testimony was unrebutted that although McDonald's investigated whether rent was current at the time it learned of the debtor's bankruptcy filing, the debtor was current on its rent obligations. In

fact, the debtor had overpaid rent at the time of the petition. It was the testimony of Mr. Kudia that outside counsel is routinely hired in a chapter 11 case, and furthermore that outside counsel is almost always retained when matters occur in venues distant to the corporate office. Investigation of whether rent was up to date at the time of the petition certainly did not render McDonald's a "successful party" as required by the lease, especially since rent was not only current, but overpaid.

## B. Insurance

Mr. Kudia testified that McDonald's requested proof of insurance from the debtor on July 21, 1999. Having received no response, McDonald's outside counsel wrote a letter one week later requesting proof of insurance. On the same date that outside counsel sent his letter, the debtor provided proof of insurance to McDonald's. The debtor's CEO, Glenn Tilton, testified that it was his belief that proof of insurance was provided to McDonald's at the time the insurance was issued, and that at the time that proof of insurance was requested from McDonald's, the debtor was simply reaffirming that insurance was in place.

The unrebutted proof was that insurance was and is in effect on this property at all times. At worst, the debtor took one week to respond to McDonald's request for proof of insurance, and at best, the debtor was simply reaffirming its original submission of proof of insurance with McDonald's. On either count, the debtor had insurance in place at all times, and McDonald's was not a "successful party" within the scope of the bankruptcy proceeding or any other action pending. Furthermore, Mr. Kudia's testimony that outside counsel is hired as matter of course in chapter 11 proceedings buttresses the case that no extraordinary expense was in-

---

**2.** Also pending was McDonald's objection to the debtor's motion to use cash collateral. McDonald's argued that a specific carve-out should be included that allowed for payment of rent, escrow of taxes, and CAM charges. The debtor ultimately agreed to allow this provision in the cash collateral order. For a further discussion of whether this concession on the part of the debtor entitled McDonald's to attorney fees as the successful party, see discussion *infra.*

curred by McDonald's in verifying proof of insurance. At most, the cost to McDonald's was the price charged by its outside firm to write a letter to which a response was already forthcoming. Even though this expense was incurred, McDonald's is not entitled to recover its fees under the terms of the lease.

### C. Taxes

The crux of the litigation about attorney fees surrounds the debtor's reimbursement of taxes to McDonald's. The parties are largely in agreement about the facts, except for a few crucial points. Under the terms of the lease, McDonald's pays all taxes as billed by local authorities. At that point, it generates a bill to send to its lessees for reimbursement. The lease requires the lessee to reimburse McDonald's within 30 days of receipt of its bill.

What is in dispute, is how the debtor was billed for 1998 taxes by McDonald's. McDonald's contends that its ordinary practice is to send a bill directly to the lessee for taxes owed. The debtor contends that it does not have a copy of any bill from McDonald's but was instead billed by the McDonald's franchisee who shares the real property with the debtor's Front Runner Market. The debtor contends that it paid the McDonald's franchisee upon receipt of a bill from the franchisee. McDonald's put on no proof to rebut this contention as true.

McDonald's contends, and correctly so, that the debtor was obligated to pay McDonald's and not its franchisee. The relevant lease provision are found at Section 4, paragraph C of the lease:

> Except as set forth in this Agreement to the contrary, Company shall reimburse McDonald's for 50% of the real estate taxes paid by McDonald's pursuant to this Article 4. Company's obligation to reimburse McDonald's for real estate taxes will commence on the day rent commences to accrue and will cease on the date of the expiration or termination of this Agreement. Company shall pay its share of the tax bill within 30 days after McDonald's notifies Company of the amount and furnishes Company with a copy of the receipted tax bill and the calculation by which Company's share has been determined.

Mr. Tilton explained that 1998 was the first year that taxes were due by the debtor under the lease acquired at the end of 1997. The franchisee billed for all CAM charges monthly, and when the debtor received the bill from the franchisee, it assumed it was to pay the franchisee for its share of the taxes. It is undisputed that the debtor did pay the franchisee when billed. Mr. Tilton testified credibly that the debtor was unaware of the problem with the taxes until it was notified post-petition by McDonald's that certain taxes remained outstanding. The debtor then attempted to negotiate with the franchisee to pay McDonald's for the taxes the debtor had paid. When the franchisee refused, the debtor paid McDonald's directly even though it had already paid the franchisee. The franchisee and the debtor eventually agreed to credit the amount paid to future CAM charges.

McDonald's began investigating the status of the debtor's tax payment upon the filing of the petition. Mr. Kudia explained that it hired and instructed outside counsel to pursue collection of the delinquent taxes in order to protect McDonald's interest. In pursuit of that, outside counsel negotiated for additional protections in the cash collateral order and opposed the debtor's motion to assume its lease. When the real estate taxes were paid by the debtor, McDonald's withdrew its objection to the debtor's motion to assume the lease. At that point, the court entered an order allowing assumption of the lease subject only to McDonald's request for payment of attorney fees.

Mr. Tilton testified that he was puzzled by McDonald's actions. He credibly explained that negotiations with McDonald's were ongoing about the status of the taxes. Both parties were attempting to figure out what happened, and the debtor ultimately

paid the taxes to McDonald's to end any uncertainty even though it contended that the taxes had already been paid. McDonald's took the position that the debtor was in default under the lease, and therefore it acted reasonably in hiring outside counsel to pursue collection of the taxes, and even if the debtor was not in default, McDonald's would have had to hire outside counsel to negotiate the additional protections in the cash collateral order.

At best for the debtor, it was the successful party in ultimately prevailing on the motion for assumption of the lease. At best for McDonald's, it was the successful party in negotiating additional protections in the cash collateral order. According to the lease, only a successful party may recover attorney fees. While the debtor may technically have been in default for paying the franchisee instead of McDonald's directly, this is not established by the evidence. The lease simply requires that the lessee pay McDonald's within 30 days of receipt of the bill from McDonald's. McDonald's was unable to produce an invoice that the debtor was billed by McDonald's. According to Mr. Tilton, the only bill that the debtor received for 1998 taxes was from the franchisee, not McDonald's. McDonald's could only show that its normal procedure was to generate an invoice and bill the lessee directly upon payment of taxes. If in fact McDonald's billed its franchisee for the full amount of taxes owed by both the franchisee and the debtor, then no bill would have been sent by McDonald's to the debtor. Perhaps McDonald's did send an invoice, but sent it to an incorrect address, or possibly the invoice was sent directly to the debtor, but mishandled or thrown out because the debtor thought it had already paid the taxes. The truth is that the truth is unavailable.

An unknown as to what occurred means that McDonald's failed to demonstrate that the debtor was in default under the lease with respect to payment of its taxes. Furthermore, even if the debtor was in default, the debtor was ultimately the successful party in assuming the lease therefore depriving McDonald's of any right to attorney fees under the terms of the lease. Accordingly, while McDonald's may have incurred the expense of outside counsel, it has no right to seek payment for attorney fees from this debtor for alleged defaults with respect to taxes, insurance or rent.

The only remaining issue is whether McDonald's is entitled to attorney fees for the efforts expended in negotiating additional protections for McDonald's in the cash collateral order. Of the $13,257.04 sought by McDonald's in fees and expenses [3], $3,807.50 relate to fees allocated to cash collateral issues.[4] The terms of the lease permit the recovery of attorney fees to the successful party of any "action or proceeding against the other relating to the provisions of [the] Agreement, or any default under this Agreement." Again, by looking at the contract the court attempts to ascertain the intention of the parties from the contract as a whole and to give effect to that intention consistent with legal principles. *Winfree v. Educators Credit Union*, 900 S.W.2d 285, 289 (Tenn.Ct.App.1995); *Rainey v. Stansell*, 836 S.W.2d 117, 118 (Tenn.Ct.App.1992). In construing contracts, the words expressing the parties' intention should be given their usual, natural, and ordinary meaning. *Taylor v. White Stores, Inc.*, 707 S.W.2d 514, 516 (Tenn.Ct.App.1985). In the absence of fraud or mistake, a contract must be interpreted and enforced as written, even though it contains terms which may seem harsh or unjust. *Heyer–Jordan & Assocs. v. Jordan*, 801 S.W.2d 814, 821 (Tenn.Ct.App.1990).

**3.** McDonald's also estimates an additional $500 in fees and costs from the date of their response to the date of the hearing on assumption. It is unclear, what if any, of those fees relate to cash collateral issues.

**4.** Gullett Sanford Robinson & Martin billed $1,122 and Greenberg Traurig billed $2,585.50 in fees. The expenses are more difficult to separate out.

Under the terms of this lease the successful party is awarded attorney fees for "any action or proceeding" that is brought "relating to the provisions of [the] Agreement or any default under [the] Agreement." Negotiation of the terms of the debtor's use of cash collateral is not an action or proceeding related to the provisions of the lease, nor is it the result of any default. As stated earlier, McDonald's was unable to show a default in the lease. McDonald's sought and was granted a specific carve out in the cash collateral agreement to allow for the payment of taxes, rent and CAM charges. This concession on the part of the debtor was not required, but nonetheless made to facilitate negotiations. The debtor was already obligated under the terms of the lease and bankruptcy law to make those payments. Had the debtor defaulted post-petition on those obligations and had McDonald's pursued this course of action as a result of the default, then those fees would have been recoverable. However, under the proof presented to this court, there was no default, and the cash collateral negotiations did not "relate to the provisions of the lease." McDonald's may have wanted those additional protections granted in the cash collateral order because of the terms of the lease entitled it to those payments, but there existed no action or proceeding relating to the provisions of the lease in the negotiation and settlement of the cash collateral protections.

Accordingly, the court finds that as a matter of law, no attorney fees should be awarded McDonald's, and alternatively, that the proof at trial established no basis in law or fact for the award of attorney fees. The court therefore overrules McDonald's supplemental objection to the debtor's motion to assume the lease for Front Runner Market # 1116, and denies all attorney fee requests.

It is, THEREFORE, so ordered.